ORIGINAL

FILED
JUN 25 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **TODD FOX**<br>**Plaintiff,**<br>**v.**<br>**UNITED STATES,**<br>**Defendant.** | **BID PROTEST**<br><br>**Fed. Cl. No.** 08-465 C |

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Todd Fox ("Fox"), as its Complaint against the Defendant, the United States of America, acting by and through the United States Postal Service ("Postal Service"), alleges as follows:

## INTRODUCTION

1. Fox protests the Postal Service's exclusion of his participation in the reprocurement of four U.S. Postal Service Contract Delivery Service ("CDS") contracts, which expire on June 30, 2008 and which he has held for approximately seven years. Instead of allowing Fox to participate in the reprocurement of these contracts, the Postal Service secretly contacted Fox's employees, told them they would be out of a job, and asked them to independently submit their own bids. The Postal Service did not publicize the opportunity or solicit bids from Fox, even though he is both the incumbent and on the list of approved emergency contractors for that post office.

2. The Postal Service's exclusion of Fox from this procurement stems from the Postal Service's arbitrary treatment of Fox concerning the renewal of these contracts. While the Postal Service is not required to renew a CDS contract, CDS contracts provide the contractor a contractual right to appeal the non-renewal decision to the next higher level contracting authority.

The existence of such a procedure, and its establishment by contract right, implies that non-renewal decisions and appellate reviews of those decisions will not be made arbitrarily, or without notice and a meaningful opportunity to respond. But that is exactly what occurred here.

3. Fox was notified by the contracting officer that two of his contracts would not be renewed based on "customer service issues," though none were identified or referenced. Fox sought to exercise his contractually established right to seek review of that decision under the agency's appellate review procedure for such decisions. In a classic case of "decision first, notice and evidence second," the appellate authority – the next higher level contracting authority – denied Fox's appeal, again without citation to a single example of "customer service issues." Several days *after* the appellate authority made its decision, it finally released the file it had supposedly reviewed. The file showed that four of the five "Irregularity Reports" concerned unrelated contracts, three of the reports omitted the section containing the contractor's response, two of the reports were illegible, and all of the reports were either disputed, relatively minor, or fully resolved. Only one report could fairly be considered a "customer service issue," and that concerned the contractor's delivery of a damaged mail-piece (which the contractor did not damage) under an entirely different contract.

4. After the Postal Service's appellate authority released the underlying basis for its decision, Fox sent a detailed letter to the appellate authority explaining why the file did not support its decision. Exhibit F to the Affidavit of Todd Fox ("Fox Affidavit"), filed herewith. The appellate authority refused to address the matter, or the merits of the issues, and simply re-affirmed the decision it had already made – again, without identifying a single instance of "lack of customer service."

5. To make matters worse, the Postal Service had by now interfered with Fox's existing contract by contacting his employees, telling them they would soon be unemployed, and asking them to bid on the reprocurement of Fox's contracts without Fox's knowledge. Even though Fox was on the list of contractors eligible for emergency reprocurement contracts, the contracting officer did not contact Fox to bid on the reprocurement. At no time did the Postal Service act in accordance with its debarment and suspension procedures, which require notice and a hearing.

6. Because Fox's current contracts are set to expire on June 30, 2008, Fox seeks temporary injunctive relief on or before that date to prevent the Postal Service from excluding him from the reprocurement of these contracts. If Fox does not obtain temporary relief, he will be irreparably harmed. He will lose the opportunity to bid on the current work and will likely lose his current employees who are now performing the work.

## PARTIES

7. Todd Fox is an experienced contractor for the Postal Service, having performed under a variety of different box delivery and highway contracts since 1990.

8. The Defendant is the United States, acting by and through the United States Postal Service.

## JURISDICTION AND STANDING

9. This Court has jurisdiction over this bid protest action involving the Postal Service pursuant to 28 U.S.C. § 1491(b). *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080–84 (Fed. Cir. 2001); *Asia Pacific Airlines v. United States*, 68 Fed. Cl. 8, 16–17 (2005).

10. Fox is an "interested party" for purposes of filing this bid protest in that he is the incumbent contractor whose economic interest is adversely affected by the Postal Service's exclusion of him from consideration in the reprocurement of these contracts. In the absence of the

agency's arbitrary actions, prejudicial violations of law, and other errors described below, the Postal Service would have either renewed Fox's contract during renewal negotiations or would have solicited bids from Fox for the reprocurement of the contracts.

## APPLICABLE LAWS, POLICIES AND CONTRACTUAL PROVISIONS

11. The Postal Accountability and Enhancement Act (PAEA), Public Law 109-435, enacted December 20, 2006, contains a special provision requiring the Postal Service to treat its suppliers fairly:

> It is the sense of Congress that the Postal Service should –
>
> (1) ensure the fair and consistent treatment of suppliers and contractors in its current purchasing policies and any revision or replacement of such policies, such as through the use of competitive contract award procedures, effective dispute resolution mechanisms, and socioeconomic programs. [Pub. L. No. 109-435 § 1004.]

12. The Postal Service is not governed by the Federal Acquisition Regulation. Rather, the Postal Service has established its own procurement rules and procedures, which are currently set out in the agency's own 656-page manual called the *Supplying Practices and Principles* (SPP). Although the SPP was not issued as a formal regulation, it serves as the agency's *de facto* procurement regulations and is the agency's final policy guidance on procurement matters.

13. The SPP requires that the Postal Service treat suppliers in a fair an objective matter, as described at SPP page 4:

> Because supplier relationships are central to supply chain success, the VP, SM is responsible for source selection, defining supplier relationship strategies, ensuring that supplier relations are conducted in a fair, objective, and business-like manner, and addressing and resolving supplier relationship issues.

14. Similarly, the SPP requires that the Postal Service treat suppliers in a fair an objective matter, as described at page 5:

> The Postal Service will be fair, objective, and business-like in its dealings with the supplier community, ensuring that business decisions are driven by business considerations.

15. And similarly, the SPP requires that the Postal Service treat suppliers in a fair an objective matter, as described at page 8:

> Suppliers are essential and valued business partners of the Postal Service, and the Postal Service is committed to treating its suppliers in a fair, objective, and business-like manner.

16. The standard CDS contract clause that sets out the appellate procedure for review of a non-renewal decision is as follows:

> **2.2.2 Appeals to Next Higher Contracting Authority**
>
> a. The supplier may appeal through the contracting officer to the next higher contracting authority: (1) If no settlement is reached, the financial amount resulting from a termination for convenience by the contracting officer under Section 2.3.3b; or (2) the decision of nonrenewal.
> Such an appeal shall be filed in writing by the supplier within five (5) business days after receipt of "Notice of Termination or Non-renewal." The supplier shall include in the appeal the following, as applicable:
>
> 1. A copy of the contracting officer's decision for a termination for convenience, or copy of the contracting officer's decision letter not to renew the contract.
>
> 2. A copy of other related correspondence.
>
> 3. A statement of the action or failure to act, from which the appeal is taken.
>
> 4. A statement of the reasons why the supplier believes the action taken or failure to act is erroneous.
> b. The contracting officer's decision to not renew the contract shall be stayed until decision on the appeal is rendered by the next higher level of contracting authority.
> c. Neither the decision not to renew the contract, nor the decision on appeal by the next higher level of contracting authority is a dispute under the *Claims and Disputes* clause.
>
> This clause does not apply to contracts terminated under Clause B-67.

## FACTUAL ALLEGATIONS

17. For approximately seven years, Fox has been the contractor under United States Postal Service Highway Contract Route ("HCR") Numbers 299C5 and 299D2, and the extensions of these contracts under separate contract numbers HCR 299D7 and 299D8 (the "extension contracts") out of the Bluffton, South Carolina post office. Fox Affidavit at ¶¶ 1, 2.

18. In June of 2007, both of these contracts were renewed for a period of one year by the contracting officer. In his renewal, the contracting officer alleged with respect to one of these contracts that the one-year renewal was attributed to "the poor performance and unprofessional behavior [Fox had] exhibited during the contract." At the time of the renewal, Fox was unaware of any such issues, but he accepted the renewal and continued performing. Fox Affidavit at ¶ 3; Exhibit A to Fox Affidavit.

19. During the one year renewal period on the non-renewed contracts and the extension contracts, Fox was not informed of any "poor performance" or "unprofessional behavior" that would lead him to believe the Postal Service would decide to not renew the contracts. Fox Affidavit at ¶ 4.

20. Contract Nos. HCR 299C5 and 299D2, as well as the two extension contracts, are set to expire on June 30, 2008. Fox Affidavit at ¶ 5.

21. Fox's CDS contracts are his livelihood and only source of income. Fox Affidavit at ¶ 6.

**Non-Renewal Decision and Postal Service's Appellate Review of That Decision**

22. On May 8, 2008, Fox received a letter from the contracting officer (dated May 6, 2008) notifying him that the Postal Service would not renew HCR Nos. 299C5 and 299D2 (the "non-renewed contracts") based on a "lack of attention to customer service issues." The letter did not identify any such issues or give any explanation of the Postal Service's reasons for the non-renewal. Fox Affidavit at ¶ 7; Exhibit B to Fox Affidavit.

23. The contracting officer's May 8, 2008 letter did not state whether the non-renewal decision also applied to the two extension contracts. *See* Exhibit B to Fox Affidavit.

24. By letter dated May 13, 2008, Fox appealed this non-renewal decision to the next higher level contracting authority pursuant to his contractual right to do so. Fox requested that the non-renewal decision be overturned because he was not given any information regarding the rationale for the decision. In the alternative, Fox requested that the Postal Service provide notice of the underlying justification for non-renewal and a meaningful opportunity to address the issues. Fox Affidavit at ¶ 8; Exhibit C to Fox Affidavit.

25. By letter dated June 9, 2008, the Postal Service summarily denied Fox's appeal without identifying any substantive reason or underlying factual justification for the action. The denial letter referenced a "file" upon which the decision was based, but was not released to Fox or his counsel before the denial. Fox Affidavit at ¶ 9; Exhibit D to Fox Affidavit.

26. On June 12, 2008, Fox responded to the summary denial by letter, through counsel, and requested that the Postal Service provide a copy of its "file" on which the non-renewal decision was based. As the postscript of the letter indicates, the "file" was subsequently received by counsel that day. Fox Affidavit at ¶ 10; Exhibit E to Fox Affidavit.

27. By letter dated June 20, 2008, Fox's counsel requested that the Postal Service reconsider its non-renewal decision based on its review of the file that had finally been provided. Fox's counsel noted that of the five "Irregularity Reports" (PS Form 5500) in the file, only one actually concerned either of the two referenced contracts. The Postal Service appellate authority was likely unaware of this, because several of the 5500s either did not identify a contract number, or referenced an incorrect contract number. Further, three of the five 5500s included in the file were missing the contractor's response, which were included on the completed form. Several of the 5500s were also illegible and thus could not have been substantively reviewed by the next higher level authority. Fox Affidavit at ¶ 11; Exhibit F to Fox Affidavit.

28. The June 20, 2008 letter also responded to the merits of each 5500 included in the "file," which was Fox's first opportunity to address the merits of the allegations raised in the non-renewal decision. Even though the non-renewal decision was allegedly based on "customer service issues," only one of the 5500s in the "file" could fairly be characterized as pertaining to customer service, and that 5500 related to a different contract than those subject to the non-renewal decision. This 5500 referenced a package containing bent photographs. Fox's employee represented that she did not bend the package, and there was no evidence to the contrary. Despite the lack of evidence, Fox's employee was blamed for the issue. Regardless, that 5500 (which concerned a different contract) was the only report alleging damaged mail, and it was an isolated and never repeated incident involving disputed facts—not a chargeable performance deficiency. Fox Affidavit at ¶ 12.

29. Of the 5500s included in the "file," only one concerned performance under either of the non-renewed contracts. This 5500 was almost one year old and involved an alleged failure by Fox's employee to scan an Express Mail package. The 5500 itself was issued two weeks after the

event occurred. Fox's employee stated that the scan was performed and it is unknown why it was not recorded. This was also an isolated incident and never repeated. Fox Affidavit at ¶ 13.

30. The three remaining 5500s are also irrelevant to the non-renewal decision, as they were issued under different contracts, involved minor irregularities, or were fully resolved. Further, none of the remaining 5500s relate to "customer service issues." Two of the 5500s concerned the status of vehicle on postal premises: (1) a car left running in the post office parking lot; and (2) a vehicle (with no mail inside) left unlocked. The other 5500 concerned a mistaken contention that the contractor had not provided a driver, when in fact Fox performed the route personally on the day in question. Fox Affidavit at ¶ 14.

31. The quality of service provided by Fox on the non-renewed contracts and the extension contracts is consistently better, or at least equal to, the performance of other CDS contractors working out of Bluffton, South Carolina. Upon information and belief, other CDS contractors have been issued far more 5500s than has Fox, and more serious violations have been alleged with respect to those other contractors. Fox Affidavit at ¶ 15.

**The Postal Service's Secret Dealings and Exclusion of Fox in Reprocurement**

32. Instead of asking Fox, the incumbent contractor and approved emergency contractor, to submit a bid for the expiring contracts, the Postal Service secretly contacted his employees. The Postal Service told his employees that that they would soon be losing their jobs with Fox, and that they should bid independently on the emergency reprocurements of the non-renewed contracts. The Postal Service neither sought Fox's permission to contact his employees or advised Fox of these contacts. Fox Affidavit at ¶¶ 16, 17.

33. Fox is the incumbent contractor for both non-renewed contracts, and he is on the list of contractors to contact for emergency procurements out of the Bluffton, South Carolina post office, but he was not notified of the emergency reprocurement or asked to submit a bid. If he has been contacted and asked to bid, he would have done so. Fox Affidavit at ¶ 18.

**Postal Service's Termination of Two Unrelated Contracts**

34. In December of 2007, the Postal Service terminated for default one of Fox's contracts (HCR 299B3) and one of his wife, Janet Fox's, contracts (HCR 299A9) to provide services out of Beaufort, South Carolina (the "Beaufort Contracts"). The work under the Beaufort Contracts has no relation to the work under the non-renewed contracts. Fox does not believe that the terminations were proper, and he is currently appealing them to the Postal Service Board of Contract Appeals, PSBCA Nos. 6159 and 6169. Fox Affidavit at ¶ 19.

35. Fox is unaware whether the contracting officer's non-renewal decision is related to the termination of the Beaufort Contracts referenced above. Fox Affidavit at ¶ 20.

36. Similarly, the "file" that the Postal Service reviewed and forwarded to Fox's counsel did not mention anything about the termination of the Beaufort contracts. It would be improper for the Postal Service to base its non-renewal decision and exclusion of Fox from the reprocurement on the termination of the Beaufort contracts, because those contracts are not related in any way to performance of the non-renewed contracts and the propriety of the termination is disputed and in litigation. Fox Affidavit at ¶ 21.

**Hostile Postal Employee at Bluffton Post Office**

37. Also in December 2007, Fox sent a letter to the Postmaster of the Bluffton Post Office describing an alarming incident that had occurred. Fox witnessed a postal supervisor who

screamed and acted in a hostile and violent manner. This was also witnessed by several other postal clerks and carriers. The supervisor screamed "I don't care what the contract says" and picked up a 3-foot ruler and menacingly held it in the air. Fox was afraid he might become physically violent. The supervisor continued to act in a hostile manner and used profanity. Although Fox reported this incident, and the Postal Service has a zero tolerance policy for such behavior, he was never contacted by the Postal Service concerning it and thus believes it was never investigated by the Inspection Service. Fox Affidavit at ¶ 22; Exhibit G to Fox Affidavit.

## Irreparable Injury

38. The Postal Service's exclusion of Fox from the reprocurement of the non-renewed contracts is causing irreparable harm and will cause further irreparable harm until this decision is reversed. By not seeking a bid from Fox, and instead making secret and direct contacts with his employees, the Postal Service has already jeopardized Fox's relationship with those employees. Aware that the Postal Service has gone behind Fox's back and secretly asked his employees to bid on the reprocurement, his employees feel less secure in their employment and will be less likely to remain in Fox's employ. Fox Affidavit at ¶ 23.

39. Should the Postal Service continue to exclude Fox from participation in the procurement of the non-renewed contracts, his employees will have no choice but to submit their own bids, seek work from other CDS contractors, or seek other employment. If this conduct continues through the expiration of the non-renewed contracts and award of replacement contracts, Fox will likely lose his employees as he will not have other work for them and they may take other jobs. This loss will be irreparable, because once Fox loses his employees who are currently performing these contracts, he may not be able to rehire them or promptly find suitable

replacements. In addition, Fox will lose his position as the incumbent contractor. Fox Affidavit at ¶ 24.

40. The Postal Service's exclusion of Fox from participation in procurement of the non-renewed contracts also damages his reputation with his employees, postal employees and managers, other CDS contractors and their employees, postal customers, and the communities he serves. Fox Affidavit at ¶ 25.

**REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff Todd Fox respectfully requests that this Court grant judgment in his favor and grant Plaintiff the following relief and a temporary, preliminary, and final basis:

1. An Order prohibiting the Postal Service from proceeding further with its current reprocurement of the Bluffton Contracts and their extension contracts, and from awarding any contracts under this reprocurement.
2. An Order requiring the Postal Service to allow Fox to participate in any reprocurement of the Bluffton Contracts and extension contracts on a fair and equal basis with any other bidder.
3. An Order requiring the Postal Service to fairly evaluate any bid submitted by Fox and not apply unequal standards of evaluation to Fox.
4. An Order requiring the Postal Service to fully inform Fox of any reason why it intends to exclude or not solicit Fox or negatively evaluate his past performance.
5. An Order requiring the Postal Service to rescind the non-renewal decision and provide a meaningful and fair opportunity to address the charges related to the non-renewal decision.
6. Such other and further relief as the Court may deem just and proper.

June 25, 2008

Respectfully submitted,

David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Counsel for Todd Fox***

*Of Counsel:*
Sarah M. Graves
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

**Certificate of Service**

I hereby certify that on this 25th day of June, 2008, I served the foregoing document by overnight mail upon the following:

John Todor, Esq.
Department of Justice
Commercial Litigation Branch
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Sarah M. Graves
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax