ORIGINAL

FILED
JUN 25 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**TODD FOX**

**Plaintiff,**

**v.**

**UNITED STATES,**

**Defendant.**

**BID PROTEST**

**Fed. Cl. No.** 08-465 C

**PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Rule 65 of the Rules of this Court, Plaintiff, by its undersigned attorneys, respectfully applies for a Temporary Restraining Order enjoining Defendant, the United States Postal Service, from proceeding with the reprocurement of Highway Contract Route ("HCR") Numbers 299C5 and 299D2. Plaintiff is currently unaware of the status of award or whether a potential awardee has been selected. Plaintiff requests issuance of the Temporary Restraining Order for a period of 10 days from issuance.

In support of this Application, Plaintiff states that it will suffer substantial and immediate irreparable injury unless Defendant is enjoined for a period of 10 days. Defendant will not be harmed by the issuance of a Temporary Restraining Order, and the issuance of the Temporary Restraining Order will preserve the *status quo* and protect both the Plaintiff's and the public's interest. Plaintiff has no adequate remedy at law, and is likely to succeed on the merits of this action, all as more fully set forth in the accompanying Memorandum in Support of Plaintiff's Application for a Temporary Restraining Order.

Plaintiff respectfully submits that issuance of the requested Temporary Restraining Order will preserve the *status quo* until a hearing on its Application for a Preliminary Injunction can be held.

**WHEREFORE**, Plaintiff requests this Court to enter a Temporary Restraining Order in accordance with the attached Proposed Order.

June 25, 2008

Respectfully submitted,

David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Counsel for Todd Fox***

*Of Counsel:*
Sarah M. Graves
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 – fax

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TODD FOX** | ) | **BID PROTEST** |
| **Plaintiff,** | ) | |
| **v.** | ) | **Fed. Cl. No. ________** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**ORDER**

Upon consideration of Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction, Plaintiff's accompanying Memorandum in Support thereof, and Defendant's Opposition thereto, the Court finds as follows:

1. There is a substantial likelihood Plaintiff will prevail on the merits of its claims;
2. Plaintiff will suffer irreparable injury if the injunctive relief is not granted;
3. The threatened injury to Plaintiff outweighs the harm to Defendant and other third parties; and
4. Granting the temporary restraining order is in the public interest.

Accordingly, the Court grants Plaintiff's Application for a Temporary Restraining Order and hereby **ORDERS** AND **ENJOINS** Defendant as follows:

1. Defendant is prohibited, for a period of 10 days, from proceeding further with its current reprocurement of the Bluffton Contracts and their extension contracts, and from awarding any contracts under this reprocurement; and

2. Defendant shall immediately suspend all reprocurement efforts under HCR 299C5 and 299D2, and shall allow a temporary extension of the contracts until the Court issues its Judgment on the merits of Plaintiff's claims.

Security shall be set at $______________.

**IT IS SO ORDERED.**

_________________________________
JUDGE

**Certificate of Service**

I hereby certify that on this 25th day of June, 2008, I served the foregoing document by overnight mail upon the following:

John Todor, Esq.
Department of Justice
Commercial Litigation Branch
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Sarah M. Graves
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **TODD FOX,** | ) | |
| | ) | **BID PROTEST** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Fed. Cl. No. ________** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Pursuant to Rule 65 and Appendix C of the Rules of the Court of Federal Claims, Plaintiff Todd Fox ("Fox") hereby requests that the Court enter a temporary restraining order and a preliminary injunction prohibiting the Defendant United States, acting through the United States Postal Service, from proceeding with and excluding the Plaintiff from the re-procurement of four Contract Delivery Service ("CDS") contracts in Bluffton, South Carolina under which he is the incumbent contractor.

**Factual Background**

Plaintiff's Complaint and accompanying Affidavit of Todd Fox set out the factual background of this matter, which will not be repeated at length here. In short, the Postal Service has treated Fox arbitrarily by taking a "decision first, notice and charges later" approach in its decision not to renew his contracts, the appellate review of that decision, and the decision to exclude him from the re-procurement of these contracts.

The arbitrary treatment began with the Postal Service's decision not to renew Fox's contracts. While the Postal Service is under no obligation to renew CDS contracts, it does have an obligation to fairly consider whether it will renew the contract. This duty is demonstrated by

the existence of an internal agency procedure in which the contractor can appeal this decision to a higher level contracting authority. When the Postal Service finally released its file that supposedly supported its non-renewal decision, the file was practically barren of support. The file contained only five Form 5500 "Irregularity Reports"—a relatively small number. *See, e.g.,* West Wilson Enterprises, Inc., PSBCA Nos. 5203 and 5219, May 29, 2008 (default termination overturned despite 44 different 5500s and numerous written warnings under a single HCR contract during a three year period). *See also* Davis, PSBCA No. 3400, 94-3 BCA P 27164 (default termination overturned despite 48 irregularity reports); Del Transport, Inc., PSBCA No. 1279, 1985 WL 16887 (default termination overturned despite 139 irregularity reports); Donald J. Michaletz Michaletz Trucking, PSBCA No. 639, 1979 WL 2459 (default termination overturned despite 196 irregularity reports).

Several of the irregularity reports were illegible, and thus could not have even been read by the Postal Service's internal appellate authority. Three of the five reports were incomplete, in that they did not contain the contractor's response. And only one of the five reports even related to the two referenced contracts. In most cases, the reports were unsupported factually, disputed, or outright wrong. In all cases, the alleged deficiencies were incredibly minor and never repeated.

The agency's arbitrary and cavalier approach carried over to the decision to exclude Fox from the re-procurement of these contracts, which is the subject of this protest. With the contracts set to expire on June 30, 2008, rather than ask Fox to submit a reprocurement bid, the Postal Service went behind Fox's back and secretly contacted his employees. The Postal Service told his employees that they would soon be out of a job so they should independently submit bids for the reprocurement. The Postal Service did not ask Fox for his permission to talk to his

employees, nor advise him that it was making such contacts. And although the Postal Service asked Fox's employees to submit a bid, it did not ask Fox to do so, demonstrating its intention to exclude him from the procurement. Indeed, Fox has learned that the Postal Service told his employees that the deadline to submit bids was Monday, June 23, 2008. The Postal Service has never contacted Fox about bidding on the reprocurement, nor was the opportunity publicized.

## Argument

The issuance of a Temporary Restraining Order and a Preliminary Injunction is essential to preserve the *status quo* and prevent immediate and irreparable injury to Fox and the general public interest. Because of the press of time, this discussion omits general case law on the factors in considering temporary injunctive relief and goes directly to the merits of the argument.

### A. Likelihood of Prevailing on the Merits.

As demonstrated by Fox's affidavit, Fox is likely to prevail on the merits. The Postal Service has stonewalled at every level, and when it finally released the file that supposedly supported its non-renewal decision and its decision to exclude Fox from the re-procurement, it was practically barren of support. Of the five 5500s contained therein, only one actually pertained to the two referenced contracts. All of the 5500s were relatively minor, even the ones that were disputed, factually unsupported by USPS, or fully resolved.

he termination of the Beaufort Contracts was not mentioned as grounds supporting the Postal Service's exclusion of Fox, but even if the Postal Service were to now decide to throw this in the hopper, it would not justify the decision. The Beaufort Contracts were performed by different individuals, using different vehicles, under different USPS management and

supervision, out of a Post Office 30 miles away from Bluffton – and that termination action was improper and is now in litigation. There is simply no connection between Fox's performance on the unrelated Beaufort Contracts six months ago and his performance on the Bluffton Contracts.

Moreover, the record shows that the Postal Service's appellate review of the non-renewal decision was a thoughtless, rubber-stamp. The file before the next higher level contracting authority was incomplete and illegible – precluding a fair review, even if that had been the reviewer's intention. Moreover, the reviewer did not have the benefit of Fox's response to the charges against him, because the Postal Service never provided the file to Fox until after the appellate decision was made. "Decision first, notice and charges later" is beneath what we expect from our public agencies and is a violation of the due process clause of the United States Constitution. Moreover, when Fox finally was provided the file upon which the non-renewal decision was based, and the decision to exclude him from the re-procurement, he showed that the charges against him were irrelevant, resolved, and miniscule. Fox has indeed showed he is likely to prevail on the merits.

**B. Balance of the Harms**

As demonstrated by Fox's affidavit, he has already been irreparably harmed, and will suffer further irreparable harm, by the Postal Service's actions unless it is enjoined. By going around Fox and secretly contacting his employees directly, telling them they would soon be out of a job, and then asking them to submit independent bids, the Postal Service has shaken their confidence in their employer. If this wrong is not promptly righted, Fox may lose these employees and be unable to regain them later, as they may take other jobs or be otherwise unavailable. These contracts are Fox's only occupation, and while not sizeable dollar amounts,

they represent his entire livelihood. The Postal Service's end-around is also damaging his reputation with his employees, the post offices he serves, and the community he serves. If the Postal Service's wrongful conduct is allowed to run its course, Fox's reputation will be further damaged. Needless to say, the loss of these contracts will also cause irreparable economic loss.

By contrast, the Postal Service would not be damaged in any way by the grant of temporary and preliminary injunctive relief. As evidenced by the lack of 5500s concerning customer service issues under the referenced contracts – ironically, this was the basis for the arbitrary non-renewal decision – postal customers on these routes are being well-served. If these routes are awarded to another contractor, however, postal customers face the possibility of disruption and delay while a new contractor learns the routes.

**C. The Public Interest**

The public interest further compels the award of temporary, preliminary, and permanent injunctive relief. The public has a strong interest in the fair and objective procurement of public contracts. Congress itself has spoken on this issue, stating in recent legislation that it is the sense of the Congress that the Postal Service should "ensure the fair and consistent treatment of suppliers." Postal Accountability and Enhancement Act, Pub. L. No. 109-435, December 20, 2006, sec. 1004. Similarly, the Postal Service's own purchasing policies require the agency to treat suppliers fairly and objectively. *USPS Supplying Principles and Practices*, pp. 4, 5, and 8. And the public has in interest in the enforcement of contract provisions, such as those in Fox's CDS contracts, that establish by contract right an appellate procedure for the presumably fair consideration of contract renewals.

Most importantly, there will be no disruption or reduction in service to the public by granting Plaintiff's application. Although the grounds alleged for the non-renewal decision was the supposed lack of attention to "customer service issues," the release of the Postal Service's file – well after all the decisions had been made – explodes that myth. There was no objective support for that conclusion. Postal customers along these routes are being well-served. This is doubly demonstrated by the Postal Service's secret contacts with Fox's employees who are currently performing this work, asking them to submit independent bids. If Fox's contract performance were so lacking, why would the Postal Service want the very individuals who are performing these contracts submit independent bids?

Accordingly, pursuant to Rule 65 of the Court of Federal Claims, Plaintiff respectfully requests that the Court schedule a hearing on this Motion as soon as possible and, upon hearing argument, enter a Temporary Restraining Order and Preliminary Injunction granting the following relief:

1. An Order prohibiting the Postal Service from proceeding further with its current reprocurement of the Bluffton Contracts and their extension contracts, and from awarding any contracts under this reprocurement.

2. An Order requiring the Postal Service to allow Fox to participate in any reprocurement of the Bluffton Contracts and extension contracts on a fair and equal basis with any other bidder.

3. An Order requiring the Postal Service to fairly evaluate any bid submitted by Fox and not apply unequal standards of evaluation to Fox.

4. An Order requiring the Postal Service to fully inform Fox of any reason why it intends to exclude or not solicit Fox or negatively evaluate his past performance.

5. An Order requiring the Postal Service to rescind the non-renewal decision and provide a meaningful and fair opportunity to address the charges related to the non-renewal decision.

6. Such other and further relief as the Court may deem just and proper.

June 25, 2008

Respectfully submitted,

David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Counsel for Todd Fox***

*Of Counsel:*
Sarah M. Graves
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

**Certificate of Service**

I hereby certify that on this 25th day of June, 2008, I served the foregoing document by overnight mail upon the following:

John Todor, Esq.
Department of Justice
Commercial Litigation Branch
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530

Sarah M. Graves
AKERMAN SENTERFITT WICKWIRE GAVIN
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TODD FOX** | ) | **BID PROTEST** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Fed. Cl. No. ________** |
| | ) | |
| **UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**AFFIDAVIT OF TODD FOX**

I, Todd Fox, having first been duly sworn upon my oath, do hereby state as follows:

1. I am the current contractor under U.S. Postal Service Contract Nos. HCR 299C5 and HCR 299D2 (the "non-renewed contracts"), and the extension of these contracts under separate Contract Nos. HCR 299D7 and HCR 299D8 (the "extension contracts"). These are Contract Delivery Service ("CDS") contracts, in which the contractor cases mail at the post office and then delivers the mail to postal customers along a fixed route. These four CDS contracts are for service out of the Bluffton, South Carolina Post Office (collectively, the "Bluffton contracts").

2. I have provided service under the Bluffton contracts for approximately 7 years. The route was originally a single contract, which split twice, resulting in four separate CDS contracts. The annual amount of these contracts, as amended, are as follows:

- HCR 299D2 in the amount of $38,483.17;
- HCR 299D7 (extension of HCR 299D2) in the amount of $15,471.40;
- HCR 299C5 in the amount of $42,459.18; and
- HCR 299D8 (extension of HCR 299C5) in the amount of $20,501.00.

3. In June of 2007, the Bluffton contracts were renewed for a period of one year by the contracting officer. In a letter regarding the renewal of HCR 299C5, the contracting officer alleged that the one year renewal was attributed to "the poor performance and unprofessional behavior [I had] exhibited during the contract." At the time of the renewal, I was not aware of any such issues or allegations, but I nonetheless accepted the renewal and continued performing. (Exhibit A.)

4. During the one year renewal period on the Bluffton contracts, I was not informed of any "poor performance" or "unprofessional behavior." As the expiration date approached, I had no reason to believe that the Postal Service would decide to not renew the Bluffton contracts.

5. The Bluffton contracts are set to expire on June 30, 2008.

6. My CDS contracts are my livelihood and my only source of income.

**Non-Renewal Decision and USPS's Appellate Review of That Decision**

7. On May 8, 2008, I received a letter dated May 6, 2008 from the contracting officer notifying me that the Postal Service would not renew HCR Contract Nos. 299C5 and 299D2. The reason given for the non-renewal was a "lack of attention to customer service issues." The letter did not identify any such issues or give any further information about the reasons for the decision. I had been given no prior notice of this action or any opportunity to address the matter. I was not aware of any "lack of customer service issues" under these contracts or any reason that would cause the Postal Service not to renew them. The letter provided, however, that I could appeal the non-renewal decision to the "Next Higher Level Contracting Authority." (Exhibit B.)

8. I appealed the non-renewal decision by letter dated May 13, 2008 from my attorney. Because the contracting officer's non-renewal letter did not describe the underlying

rationale for the decision, or provide any specific information about the grounds for the decision, I asked the Postal Service to overturn it or provide notice of the underlying charges so I could address them. (Exhibit C.)

9. By letter dated June 9, 2008, the Postal Service's Acting Manager for Surface Transportation, Karen Pompanella, summarily denied my appeal letter. As with the original decision, this letter did not identify any substantive reason or underlying fact that justified the non-renewal. Ms. Pompanella's letter did state, however, that she had reviewed a "file" concerning the matter. The Postal Service had not provided me or my attorney with that file, or even mentioned its existence, prior to this letter. (Exhibit D.)

10. By letter dated June 12, 2008, my attorney responded to the Ms. Pompanella's June 9, 2008 letter, requesting that the Postal Service provide the "file" that she had reviewed. The postscript to this letter notes that my attorney received the file from Ms. Pompanella just after he had written the letter. (Exhibit E.)

11. By letter dated June 20, 2008, my attorney asked the Postal Service to reconsider its non-renewal decision based on our first opportunity to review the "file" and address the merits of the non-renewal decision. The letter noted that the file contained five 5500 Irregularity Reports, but only one actually concerned the two referenced contracts. The Postal Service may have been unaware of this, because several of the 5500s either did not identify a contract number or referenced the wrong contract number. In addition, the file showed that three of the 5500 forms that were in Ms. Pompanella's file were incomplete because they lacked the contractor's response, which was on the completed version of the form. The Postal Service's file also had illegible copies of several of the 5500s, so Ms. Pompanella would not have been able to read them. (Exhibit F.)

12. My attorney's June 20, 2008 letter also responded to the merits of each 5500. This was the first opportunity we had to address the merits of the charges that were made against my performance under the contracts up for renewal. While the non-renewal decision was supposedly based on "customer service issues," only one of the 5500s in Ms. Pompanella's file could fairly be characterized as pertaining to customer service issues. And that 5500 related to a different contract – not one of the contracts referenced in the renewal letter. The 5500 itself concerned a package containing two bent photographs. My employee stated that she did not bend the package, and there is no evidence that she did so. Nonetheless, the Postmaster blamed my employee, regardless of the lack of evidence. In any case, that was the only 5500 concerning damaged mail. There were no previous or further such 5500s alleging damage to the mail, demonstrating that this was a rare occurrence and not a chargeable performance deficiency.

13. Only one 5500 concerned performance under the contracts at issue and was dated July 27, 2007 – almost a full year ago. That 5500 involved an alleged failure by my driver to scan an attempted delivery of an Express Mail package. The 5500 was issued late – two weeks after the event occurred. The PS Form 5500 stated that irregularities are supposed to be reported "on the spot," not two weeks later. In any case, my driver did perform the scan – it is unknown why it was not recorded. No further 5500s concerning scan failures were issued since this event, showing this was a rare occurrence.

14. The three remaining 5500s – all under different contracts, not the ones referenced in the non-renewal letter – were similarly irrelevant, minor, and/or fully resolved. And none of them bear any relation to customer service issues. Two concerned the status of vehicles on postal premises: a car left running in the post office parking lot and a vehicle (with no mail in it) left unlocked. I advised my driver not to leave the vehicle running or unlocked on postal

premises, and no further 5500s were issued. The matter was thus resolved. The other 5500 concerned a mistaken contention that the contractor had not provided a driver, when in fact I myself performed the route that day and delivered all mail in a timely fashion.

15. I am generally familiar with the performance of CDS contractors in the Bluffton and Beaufort Post Offices in South Carolina. The level of performance under my contracts is consistently better, or equal to, the performance of other CDS contractors in those offices. I believe that other CDS contractors have been issued far more 5500s than I have been issued and for much more serious reasons, but they have not been denied renewal or excluded from participation in future procurements. I know of no proper reason why the Postal Service would exclude me from participating in CDS procurements.

**USPS Secret Contacts with My Employees and Exclusion of My Participation**

16. I learned from one of my employees, Debbie Mayes, who performs the route under Contract No. HCR 299A8, that she had been secretly contacted directly by Jo Clemmer from the contracting officer's office. Clemmer told her that the contracts were not going to be renewed and that she would be out of a job. She then solicited a bid from Mayes for the emergency re-procurement of the contract. Clemmer told her that her bid must be submitted by Monday, June 23 at 3 pm. My employee was emotionally distraught by this phone call. She likes working for me and did not want to "go behind my back." At the same time, she did not want to lose her livelihood.

17. I also learned that another one of my employees, Susie Hill, was similarly secretly contacted by the Postal Service and asked to submit a bid. The Postal Service neither sought my permission to make direct contact with my employees, nor advised me of these contacts afterwards.

18. I am the incumbent contractor for the Bluffton contracts and I am on the list of contractors to contact for emergency procurements out of the Bluffton Post Office. The Postal Service, however, did not notify me of the emergency procurement or ask me to submit a bid for the emergency procurement. If I had been contacted or allowed to submit a bid for the Bluffton contracts, I would most definitely have done so.

**USPS Termination of Two Unrelated Contracts**

19. In December 2007, the Postal Service terminated for default one of my contracts (HCR 299B3) and one of my wife Janet Fox's contracts (HCR 299A9) to provide CDS services out of Beaufort, South Carolina (collectively, the "Beaufort contracts"). The work under the Beaufort contracts has no relation to the work under the Bluffton contracts. The two post offices are about 30 miles apart, and each have separate postmasters and supervisors. The employees who worked under the Beaufort contracts are different from those who currently work under the Bluffton contracts. There is no connection between work performed under the Beaufort contracts and the Bluffton contracts. We do not believe the termination of the Beaufort contracts was proper or warranted, and we have appealed it to the Postal Service Board of Contract Appeals, PSBCA Nos. 6159 and 6169.

20. I do not know whether the Postal Service's decision not to renew the Bluffton contracts, or its decision not to solicit a bid from me for the re-procurement of the Bluffton contracts, is related to its earlier termination of the separate Beaufort contracts. The Postal Service's non-renewal letter did not cite the Beaufort contracts as grounds for non-renewal, and neither did the appellate review of that decision.

21. Similarly, the file that Ms. Pompanella reviewed and forwarded to my attorney did not mention anything about the termination of the Beaufort contracts. If the decision not to

renew my Bluffton contracts and exclude me from the reprocurement was based on the termination of the Beaufort contracts, that would be improper because those contracts are not related in any way to performance of the Bluffton contracts and the propriety of the termination is disputed and in litigation.

**Hostile Postal Employee at Bluffton Post Office**

22. Also in December 2007, I sent a letter to the Postmaster of the Bluffton Post Office describing an alarming incident that had occurred. (Exhibit G.) I witnessed a postal supervisor who screamed and acted in a hostile and violent manner. This was also witnessed by several other postal clerks and carriers. The supervisor screamed "I don't care what the contract says" and picked up a 3-foot ruler and menacingly held it in the air. I was afraid he might become physically violent. He continued to act in a hostile manner and used profanity. Although I reported this incident, and the Postal Service has a zero tolerance policy for such behavior, I was never contacted by the Postal Service concerning it and thus believe it was never investigated by the Inspection Service.

**Irreparable Injury**

23. The Postal Service's exclusion of me from the re-procurement of the Bluffton contracts is causing irreparable harm and will cause further irreparable harm until this decision is reversed. By not seeking a bid from me, and instead making secret and direct contacts with my employees, the Postal Service has already jeopardized my relationship with my employees. Aware that the Postal Service has "gone behind my back" and asked my employees to submit bids but not me, my employees feel less secure in their employment by me and will be less likely to remain in my employ.

24. Should the Postal Service continue to exclude me from participation in the procurement of the Bluffton contracts, my employees will have no choice but to submit their own bids, seek work from other CDS contractors, or seek other employment. If this conduct continues through the expiration of the Bluffton contracts and award of replacement contracts, I will likely lose my employees as I will not have other work for them and they may take other jobs. This loss will be irreparable, because once I lose the employees who are currently performing these contracts, I may not be able to rehire them or promptly find suitable replacements. In addition, I will lose my position as the incumbent contractor.

25. The Postal Service's exclusion of me from participation in procurement of the Bluffton contracts also damages my reputation with my employees, postal employees and managers, other CDS contractors and their employees, postal customers, and the communities I serve.

Further, Affiant sayeth not.

Todd Fox

Sworn and subscribed to before me this 25th day of June 2008.

Michele Hangiacana
Notary Public

My Commission Expires: My Commission Expires October 22, 2011

TRANSPORTATION CONT... OFFICER
SOUTHEAST AREA OPERATIONS

UNITED STATES
POSTAL SERVICE

... 3 2008

Date: June 26, 2007

Mr. Todd Fox
225 Pinecrest Circle
Bluffton SC 29910-7935

Dear Contractor,

Enclosed is your copy of the renewal contract HCR 299C5 Bluffton, SC to Trotting Hill Lane, SC.

Please make an appointment with the Administrative Official, Bluffton, SC so that the vehicle(s) may be inspected for contract compliance. It is the responsibility of the Administrative Official to ensure the equipment used on renewal contracts has been inspected for contract compliance and sufficiency at least 48 hours prior to start up of contract service. The completed inspection form should be returned to this office. A copy should be maintained at the local office.

By July 1, 2007, you must submit to your Administrative Official a current driver's record from the Bureau of Motor Vehicles and a PS Form 2025 for each driver.

You must submit documentation of your vehicle insurance policy to this office PRIOR TO July 1, 2007. This documentation must demonstrate that you meet the minimum insurance requirements for your contract. Proof of insurance consists of the following: declaration page or renewal billing notice showing the named insured as the Contractor of Record; semi-annual or annual premium showing all applicable discounts or exclusions; terms of coverage (dates) and limits of liability; and a list or schedule of all covered vehicles.

You will be required to certify your fuel usage for the last twenty-eight (28) days in June. You should document your fuel usage by completing the fuel use certification form enclosed with this letter. Submit the completed fuel use certification form and receipts to document actual costs. Fuel costs will be adjusted accordingly on your cost statement.

Your routes at the Bluffton, SC Post Office are being reviewed due to the poor performance and unprofessional behavior you have exhibited during the current contract term while working at the Beaufort, SC Post Office. Our office needs to be assured that you will continue to provide consistent, reliable fashion on *all the routes* for which you are responsible. It is your responsibility as contractor to ensure that contract requirements are met, at all times, which requires reliable equipment and reliable drivers. In addition, we expect you as the contractor to recognize that you are required to handle yourself in a professional manner in all interactions, especially those involving customers and Postal officials. We realize that these types of responsibilities can be challenging at times, but regardless, you have contracted for a service and we expect full compliance.

It is my decision as Contracting Officer, to limit the term of your renewal to a one-year term during which time the Postal Service will be closely monitoring and evaluating your performance. If that performance is not satisfactory, the contract would be allowed to expire at the end of the one-year term or terminated prior to that time.

You may contact **Tisha Gandy**, of my staff, at **901-747-7543**, if you have concerns or require information.

Sincerely,

Bobby L. Mays, Manager
Transportation Contracts

Enclosures

cc: Administrative Official

225 N Humphreys Blvd Suite 4126
Memphis, TN 38166-7071
901-747-7543
Fax: 901-747-7420

# Things to do, to prepare for the new carpet Installation

Just a friendly reminder.

- Please take all personal items, decorations and plants home until the job is completed.

- **Desks**
  1. Place all items on top of your desk in a closed box and leave it on your desk.
  2. Remove everything from under the desk and store in boxes.
  3. Hanging files should be stored in boxes along with the plastic partition strip.
  4. All drawers should be locked.

- **Cubicle-Top cabinets**
  1. Clear the tops and lock them if possible.

- **File cabinets**
  1. Clear the top & top 2 drawers and place them in boxes in front of the cabinet.
  2. All cabinets should be locked if possible.

- **Book-cases**
  1. Clear the top, top 2 shelves, put contents in boxes, tape and label, and place the boxes in front of the bookcase.

- **Computers, monitors, PRIME printer's and phone's**
  1. IT will take care of your computers, monitor's, printer's and phone. (Disconnect expected at 2 pm the day of, re-connect by 9 am the day after completion.)

- **Boxes**
  1. Boxes can weigh up to 40 lbs.
  2. You can keep up to 5 boxes in your cubical or Office. Facilities will provide carts to move your boxes to the designated conference room. (Rm# 8620).
  3. Boxes must be sealed closed and labeled.
  4. Boxes, tape, and labels are available in the copy rooms on your floor. Other supplies are available from the Facilities help desk in Room 1P100 (#4920)

- **Refrigerators**
  - Must be emptied and defrosted a day before (prevent damage to new carpet from melting ice).
  - Water coolers & bottles disconnected and moved away from area till the carpet work is completed.

Things to do, to prepare for the new carpet Installation

Just a friendly reminder.

- Please take all personal items, decorations and plants home until the job is completed.

- Desks
  1. Place all items on top of your desk in a closed box and leave it on your desk.
  2. Remove everything from under the desk and store in boxes.
  3. Hanging files should be stored in boxes along with the plastic partition strip.
  4. All drawers should be locked.

- Cubicle-Top cabinets
  1. Clear the tops and lock them if possible.

- File cabinets
  1. Clear the top & top 2 drawers and place them in boxes in front of the cabinet.
  2. All cabinets should be locked if possible.

- Book-cases
  1. Clear the top, top 2 shelves, put contents in boxes, tape and label, and place the boxes in front of the bookcase.

- Computers, monitors, PRIME printer's and phone's
  1. IT will take care of your computers, monitor's, printer's and phone. (Disconnect expected at 2 pm the day of, re-connect by 9 am the day after completion.)

- Boxes
  1. Boxes can weigh up to 40 lbs.
  2. You can keep up to 5 boxes in your cubical or Office. Facilities will provide carts to move your boxes to the designated conference room. (Rm# 8620).
  3. Boxes must be sealed closed and labeled.
  4. Boxes, tape, and labels are available in the copy rooms on your floor. Other supplies are available from the Facilities help desk in Room 1P100 (#4920)

- Refrigerators
  - Must be emptied and defrosted a day before (prevent damage to new carpet from melting ice).
  - Water coolers & bottles disconnected and moved away from area till the carpet work is completed.

TRANSPORTATION CONTRACTING OFFICER
SOUTHEAST AREA OPERATIONS

UNITED STATES
POSTAL SERVICE

May 6, 2008

**Express Mail Number: EM 002313077 US**

TODD FOX
225 PINECREST CIRCLE
BLUFFTON SC 29910-7935

Dear Supplier:

SUBJECT: Non-Renewal Decision: HCR 299C5 & 299D2

This letter is to inform you that Highway Contract Routes 299C5 BLUFFTON, SC to TROTTING HILL LANE, SC and 299D2 BLUFFTON, SC to ROSE HILL WAY SC (N.O.), SC will not be renewed. The renewal of a transportation contract is subject to the ability of the Postal Service and the contractor to come to a joint business decision that it would be mutually beneficial to continue the business relationship.

It is noted that the level of service provided during the contract period did not fall to the level which would require that these contracts be terminated for default. Due to your lack of attention to customer service issues and the magnitude of the impact those issues have had on the customers these routes serve, the Contracting Officer has determined that it would not be in the best interest of the Postal Service to continue our business relationship.

The Contracting Officer's decision not to renew is final. You may appeal this decision through the Transportation Contracting Officer to the Next Higher Level Contracting Authority. The appeal must be made within five (5) working days after your receipt of this non-renewal letter. Include the follow documentation in your appeal:

- A copy of the Transportation Contracting Officer's decision to not renew
- A copy of any other related correspondence
- A statement of the reasons why you believe the action taken is erroneous.

Questions on this matter may be addressed to Jo Clemmer of the Highway Contracts staff at 901-747-7435.

Sincerely,

Bobby L. Mays
Manager, Transportation Contracts

CC: Postmaster – Bluffton, SC

225 NORTH HUMPHREYS BLVD SUITE 4125
MEMPHIS, TN 38166-7071
FAX: 901-747-7484
WWW.USPS.COM

Akerman Senterfitt
ATTORNEYS AT LAW
Wickwire Gavin

Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

Tysons Corner Office
International Gateway
Suite 700
8100 Boone Boulevard
Vienna, Virginia 22182-2683

www.akerman.com

703 790 8750 *tel* 703 448 1801 *fax*

May 13, 2008

Via Facsimile [901-747-7484] and Certified Mail

Mr. Bobby L. Mays
Transportation Contracting Officer
United States Postal Service
225 North Humphreys Blvd.
Suite 4126
Memphis, TN 38166-7071

Re: Appeal of Non-Renewal Decision Under HCR Nos. 299C5 & 299D2

Dear Mr. Mays:

On behalf of Mr. Todd Fox, this letter appeals the contracting officer's May 6, 2008 Non-Renewal Decision ("Decision") of HCR Nos. 299C5 and 299D2. Please forward this appeal to the Next Higher Level Contracting Authority. The Decision was received by Mr. Fox on May 8, 2008. As requested, a copy of the Decision is attached to this appeal.

**Background on the contractor**

The routes subject to the Decision have for several years, and are presently, operated by the contractor, Mr. Todd Fox and his wife Janet Fox. They also employ a long time postal subcontractor who has worked for the contractor for the past several years and was previously employed by other contractors at the Bluffton Post Office for many years before that. These individuals are experienced postal contractors and subcontractors who between them have a combined work experience with the United States Postal Service of approximately 20 years. Performing HCR contracts is their only livelihood. They take great pride in their knowledge of postal operations, performance of their job responsibilities, and the satisfaction of the postal customers they serve. All of these individuals have a good working relationship with the Postmaster, Mr. George Finley, and the customers along their routes.

**The Non-Renewal Decision**

By letter dated May 6, 2008, received by the contractor on May 8, 2008, the Manager for Transportation Contracts in the Southeast Area issued a decision not to renew HCR Contract Nos. 299C5 and 299D2. The Decision states the following as the only grounds for non-renewal:

> "It is noted that the level of service provided during the contract period did not fall to the level which would require that these contracts be terminated for default. Due to your lack of attention to customer services issues and the magnitude of the impact those issues have had on the customers these routes serve, the Contracting Officer has determined that it would not be in the best interest of the Postal Service to continue our business relationship."

The contractor's "lack of attention to customer service issues" is the only stated basis for the non-renewal Decision. The Decision does not cite a single specific instance of such behavior, nor are there any attachments or other documents that accompany or supplement the Decision.

**Grounds for Appeal**

The non-renewal Decision should be rescinded because the single rationale put forward is vague, unrelated to any contract performance requirement, and unsupported by even a single example. Only one-sentence of the non-renewal Decision addresses why the contracts will not be renewed. And that single sentence says only that the grounds for non-renewal is the contractor's supposed "lack of attention to customer service issues." The Decision does not describe a single instance of a "lack of attention to customer service issues." For example, there are no references to any customer complaints, postmaster complaints, Irregularity Notices (PS Form 5500), contract correspondence, or any specific example where the contractor failed to provide sufficient attention to customer service issues under these contracts. Neither does the Decision describe what is meant by the term "customer service issues" nor what "attention" the contractor failed to give to such issues. Neither Todd Fox, Janet Fox, nor their subcontractor are aware of any reason why these contracts should be the subject of a non-renewal decision. Bluffton is a facility where any customer service issue would be addressed by a postal supervisor or the Postmaster as it arose, so the contractor would have known if there were any unresolved customer service issues, and would certainly have been aware of such issues if they reached the magnitude that would support a non-renewal decision. They are not aware of any such issues.

The lack of any detail in the non-renewal Decision is sufficient grounds, standing alone, for the Next Higher Level Contracting Authority to sustain this appeal. For an appeals procedure to be effective, the non-renewal decision must give sufficient notice of the reasons for the non-renewal decision and the grounds supporting them. Otherwise, neither the contractor nor the Next Higher Level Contracting Authority can address and assess the reasonableness of the non-

renewal decision. The contractor cannot address unspecified or vague accusations concerning supposed performance deficiencies that are not described. Moreover, the contractor believes there are no grounds for a non-renewal decision. In addition, the Next Higher Level Contracting Authority cannot assess the merits of the non-renewal Decision when there are no specific charges or information to review. Thus, the non-renewal Decision should be vacated and the matter concluded. It is hoped that this will end the matter and the contracting officer will determine not to issue another non-renewal Decision. In the event one is issued, it should set out specific reasons and cite specific contractor actions which support the grounds for the decision.

Finally, it should be noted that the parties are currently in litigation before the PSBCA on the propriety of the termination of HCR Contract Nos. 299B3 and 299A9. The non-renewal Decision did not reference the existence of this litigation as grounds for the non-renewal Decision, and it would have been improper, illegal, and a breach of contract to base a non-renewal Decision or retaliate on such grounds.

In conclusion, since no specific or supportable grounds have been cited for the non-renewal Decision, it is requested that this appeal be granted and the non-renewal Decision rescinded.

Thank you for your attention to this matter. Should you have any questions, please feel free to contact the undersigned.

Sincerely,

AKERMAN SENTERFITT WICKWIRE GAVIN

David P. Hendel
Sarah M. Graves

Attachment

cc: Mr. Todd Fox, Contractor
George R. Finley, Bluffton S.C. Postmaster
Stephen Lobaugh, Esq.

{TY033839;1}

SUPPLY MANAGEMENT

UNITED STATES
POSTAL SERVICE

June 9, 2008

Ms. Sarah M. Graves, et al
c/o Mr. Todd Fox
8100 Boone Boulevard
Suite 700
Vienna, VA 22182-2683

Dear Ms. Graves:

Your appeals on behalf of Todd Fox of the decision by the Contracting Officer not to renew Highway Contract Routes 299C5 and 299D2 has been properly forwarded to this office for adjudication.

The renewal of transportation contracts is subject to the ability of the Postal Service and the supplier to come to a joint business decision that would be mutually beneficial to continue the business relationship. From the file, the Contracting Officer's decision not to renew these contracts was based on the supplier's documented unsatisfactory performance and poor customer service.

In adjudicating non-renewal appeals, I will not overturn a decision by a Contracting Officer unless there is clear and convincing evidence that the decision was capricious, arbitrary, or in violation of postal regulations. Neither the file materials nor any information provided by your client suggests such actions on the part of the Contracting Officer. Therefore, your appeal is denied.

Sincerely,

Karen A Pompanella

Karen A. Pompanella
Acting Manager
Surface Transportation CMC

RECEIVED JUN 11 2008

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-6210
WWW.USPS.COM

---

By letter dated June 9, 2008, your office denied Fox's appeal without allowing him a meaningful opportunity to address the merits of the charges against him, as Fox could not respond to unidentified charges. (Attachment 3.) Your office's summary denial similarly failed to address the merits of the non-renewal decision. Your June 9 letter stated only that "the file" had been reviewed and that the decision not to renew was based on "the supplier's documented unsatisfactory performance and poor customer service." As with the initial non-renewal decision, not a single instance of unsatisfactory performance or poor customer service was described. In addition, the contractor was not provided notice of the circumstances concerning these supposed deficiencies, and thus was unable to address them. The "file" that your office reviewed, and the "documented" support stated in the letter was not identified or made available for Fox to review and address.

When an agency creates an internal appeals procedure, the process must provide the respondent with notice of the grounds for its initial decision and a "meaningful opportünity" to address those grounds. *See, e.g, Schucker v. F.D.I.C.*, 401 F.3d 1347, 1353 (Fed. Cir. 2005) (an agency must follow its internally established appellate procedures, including notice and the opportunity to respond). Because the non-renewal decision, and the appellate review process, did not provide sufficient notice of the charges against the contractor and a meaningful opportunity to respond, the Postal Service has not met this requirement.

A United States District Court recently overturned an internal Postal Service appellate decision on similar grounds in *Joyce v. Potter*, Case No. 5:06-cv-339-Oc, October 16, 2006, s. (Attachment 4.) In that case, the Postal Service withdrew an HCR contractor's security clearance without providing the contractor "a meaningful opportunity to contest the basis of the U.S. Postal Service's decision." *Id.*, slip op. at pp. 5-6. There, as here, the initial Postal Service decision was a terse, conclusory statement supposedly supporting the grounds for the agency's decision, but without identifying any supporting facts or circumstances. The Postal Service's appellate review authority similarly affirmed the initial decision in the same conclusory fashion. The HCR contractor was not "informed of any evidence against her until she received the denial of her appeal." *Id.*, slip op. at p. 5. The District Court overturned the Postal Service's internal appellate decision, issued an injunction against the Postal Service, and required the Postal Service to provide the contractor a meaningful hearing. Later, the Court awarded the contractor attorney fees, finding that the Postal Service's failure to provide a meaningful hearing was an example of "bureaucratic stonewalling."

Time is running short, as the contracts in question are set to expire on or around June 30, 2008. To avoid the necessity of filing a legal action to obtain a meaningful opportunity to respond to the charges against Fox, it is requested that the non-renewal decision be suspended for 90 days to allow the parties additional time to consider the matter. In the event the contracting officer wishes to proceed with a non-renewal decision, the contracting officer should describe the

---

specific bases for the non-renewal decision and the appellate authority should provide a meaningful opportunity to address the allegations before the expiration of the 90 day period.

Your letter mentioned the existence of a "file" that was reviewed and "documented" instances of unsatisfactory performance. No such material has been provided to Fox. It is hereby requested that a copy of that file and documentation be provided promptly.

Because the current contracts are set to expire on June 30, your immediate and prompt attention to this matter is requested. If you have any questions, or you or your counsel wish to discuss this matter with me, please call me on my direct line at (703) 761-0367.

Sincerely,

**AKERMAN SENTERFITT WICKWIRE GAVIN**

David. P Hendel

Attachments

cc: Stephen Lobaugh, Esq., USPS General Counsel's office
Ms. Royale Ledbetter
Mr. Todd Fox

P.S. After this letter was drafted, you returned my call and we spoke about this appeal. You stated that file had several 5500s in it, and you would fax them to me. You stated that some of the 5500s might be hard to read, so it is requested that legible copies be obtained and provided. You stated that the file had a contacting officer's statement explaining the basis for his action. I asked for a copy of this statement, but you did not know whether you could release it. I hope you decide to release this statement so that we can understand the basis for the non-renewal decision and have a meaningful opportunity to address it. In light of this recent conversation, it is again requested that the effective date of the non-renewal decision be suspended for 90 days so that parties can have sufficient time to resolve this matter.

Akerman Senterfitt
ATTORNEYS AT LAW
Wickwire Gavin

Fort Lauderdale
Jacksonville
Los Angeles
Madison, WI
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

Tysons Corner Office
International Gateway
Suite 700
8100 Boone Boulevard
Vienna, Virginia 22182-7732

www.akerman.com

703 790 8750 *tel* 703 448 1801 *fax*

SENDER'S DIRECT DIAL LINE: (703) 761-0367
SENDER'S EMAIL: david.hendel@akerman.com

June 20, 2008

**BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
**AND BY FACSIMILE TO (202) 268-7423**

Ms. Karen A. Pompanella
Acting Manager, Surface Transportation CMC
Supply Management
U.S. Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260-6210

**Re: Appeal of Non-Renewal Decision in HCR 299C5 and 299D2**

Dear Ms. Pompanella:

This responds to the letter from your office dated June 9, 2008, denying Todd Fox's appeal of the contracting officer's non-renewal decision under HCR Contract Nos. 299C5 and 299D2 serving Bluffton, South Carolina, and to the supplemental materials received from your office on June 12, 2008 following our telephone conversation.

As we discussed over the phone on June 12, 2008, at the time the contracting officer issued the non-renewal decision, Mr. Fox was not aware of the underlying basis of the allegation concerning "lack of attention to customer service issues" on which the non-renewal decision was based. The non-renewal decision did not describe, reference, or point to a single instance of such behavior, or reference any PS Form 5500 Irregularity Reports. Similarly, your office's June 9, 2008 letter did not describe or reference any customer service issues.

Following our June 12, 2008 telephone conversation, you provided me 12 pages of supplemental material which you stated was the file you relied upon in reviewing the contracting officer's non-renewal decision. **(Exhibit A.)** The material you provided consisted of five separate PS Form 5500s. As you noted in our conversation, some of the material in your file was not legible, and presumably you were not able to read it either. Also, several of the 5500s did

---

not have a contractor's response. We were later able to obtain legible copies of the illegible 5500 reports. We also discovered that you were provided with incomplete versions for three of the five 5500 reports. The versions that you reviewed did not contain the contractor's response. Thus, when you were reviewing the file, you were under the impression that the contractor had not responded to three of the five 5500s, when in fact he had done so. Attached to this letter are the complete forms that contain the contractor's response.

Since your office did not have legible copies of all of the 5500s and did not have the contractor's response for three of the five 5500s, it is requested that your office reconsider its decision based on the complete file. In addition, since the contractor was not aware of the underlying basis for the non-renewal decision until you forwarded your file on June 12, this also represents the first time the contractor has been able to respond on the merits of the matter.

**Summary of 5500s**

Of the five 5500s that were in the file you reviewed, only one (dated July 27, 2007) involved the two contracts that were up for renewal. The remaining 5500s either did not identify a contract and did not concern the contracts at issue, or incorrectly referenced the contracts that are at issue but actually concerned different contract numbers. Thus, four out of the five 5500s do not relate to the contracts that were up for renewal. The only 5500 that concerned performance under the contracts at issue was dated July 27, 2007—almost a full year ago. That 5500 involved an alleged failure by the contractor to scan an attempted delivery of an Express Mail package. The 5500 was issued late—two weeks after the event occurred. The PS Form 5500 stated that irregularities are supposed to be reported "on the spot," not two weeks later. In any case, the contractor maintains that a scan was attempted. No further 5500s concerning scan failures were issued since this event, which occurred over 10 months ago. The issue did not concern late delivery or mis-delivery. We are not aware of any instance in which a contractor has been denied renewal of two contracts on the basis of a single, disputed 5500, issued 10 months earlier, involving a question of whether an attempted delivery scan was properly performed.

With respect to the four other 5500s, which concern other contracts, even if considered relevant, they would not support the non-renewal decision. Only one of these four 5500s concerned a "customer service issue," which was the purported grounds for the non-renewal decision. That 5500, dated April 4, 2008, concerned two photographs that had been bent. (The 5500 was charged to Contract No. HCR 299D2, but the incident actually occurred on HCR 299D7 – a different contract.) The carrier stated that he did not bend the package. It is possible that the photos were not properly packaged or were damaged during mail processing operations prior to receipt by the carrier. It is unknown how or when the photos became damaged, and there is no proof that the carrier damaged the photos. This is the only 5500 concerning damaged mail, so the carrier has no prior history of damaging mail, nor were there any further reports of damaged mail.

---

The three remaining 5500s, which did not concern performance under the two specified contracts up for renewal, bear no relation to customer service issues. Two concerned the status of vehicles on postal premises: a car left running in the post office parking lot and a vehicle (with no mail in it) left unlocked. The contractor advised its driver not to leave its vehicle running or unlocked on postal premises, and no further 5500s were issued. The matter was thus resolved. The other 5500 concerned a mistaken contention that the contractor had not provided a driver, when in fact Todd Fox himself performed the route that day and delivered all mail in a timely fashion. Since none of these 5500s could fairly be characterized as "customer service issues," they could not have provided the basis for the non-renewal decision, which was based on "customer service issues." But even if they are considered relevant, they are relatively minor issues that were promptly resolved and did not recur.

After reviewing this letter and the complete version of the file that was before your office, it is hoped that the non-renewal decision will be reconsidered and reversed. Should you have any doubts in this matter, it is suggested you contact Russell Sykes, Manager of Surface Transportation, now on assignment, who has significant experience in this area and may be familiar with this matter.

**Discussion of each 5500 in the file**

The following addresses each of the PS Form 5500s that were included in the supplemental documentation your office provided to me, in the same order as your facsimile:

- The Postal Service issued a PS Form 5500 dated April 4, 2008 concerning a customer's receipt of bent photos. The 5500 was charged to Contract No. HCR 299D2, but the incident actually occurred on HCR 299D7—a different contract. The Postmaster, who did not have any first-hand information about the matter, accused the contractor of damaging the photos. The driver stated she had not bent the photos. The contractor pointed out that the postal customer's mail box was a flat type box, so the photos would not have been bent when the carrier placed them in the mailbox. The Postmaster continued to accuse the contractor of bending the photo, but there was no proof that the contractor had done so. It is possible that the photos were not properly packaged, or were damaged during mail processing operations before being handled by the driver. It is simply unknown how or when the photos became damaged, and there is no proof that the carrier damaged the photos. This is the only 5500 concerning damaged mail, so the carrier has no prior history of damaging mail, nor were there any further reports of damaged mail. (This 5500 also shows that the Postmaster violated Postal Service policy by paying the postal customer for the value of the photos, even though the mailpiece was uninsured. The Postmaster further violated Postal Service policy by demanding that the contractor pay for the bent photo.) **SUMMARY: Wrong contract, no showing contractor was at fault, no other allegations of damaged mail. (Exhibit B.)**

---

- The Postal Service issued a PS Form 5500 dated December 7, 2007 stating that the contractor failed to put a driver on HCR 299D7. This is a different contract than those at issue in the non-renewal decision. The 5500 form that was received by your office did not include the contractor's response. The complete form, which we have attached, contains the contractor's response, stating that Todd Fox performed the route himself that day. The mail was delivered in a timely fashion and there were no customer complaints. **SUMMARY: Wrong contract, incomplete PS Form 5500, incorrect allegation, all mail delivered satisfactorily without any customer complaints. (Complete form attached as Exhibit C.)**

- The Postal Service issued a PS Form 5500 dated July 27, 2007 saying the contractor failed to scan attempted delivery of an Express Mail and that it was not scanned until the next day, upon delivery. While the contractor's reply was illegible on the copy your office provided, we have obtained a legible copy. The response notes that the 5500 was issued two weeks after the event, and that the driver does not recall failing to scan the mail piece. The contractor asked that the Postal Service provide any future irregularities on a timely basis when the incident would be fresh in everyone's memory. This 5500 was issued over 10 months ago, and since that time there have been no further 5500s concerning attempted delivery scans, or scan failures of any nature. **SUMMARY: PS Form 5500 submitted two weeks late, disputed facts about an attempted scan, no similar 5500s issued since that time (10 months ago). (Complete form attached as Exhibit D.)**

- The Postal Service issued a PS Form 5500 dated December 5, 2007 saying the back door of the contractor's vehicle was unlocked in the post office lot. The incident was charged to Contract No. HCR 299C5, but the incident actually involved HCR 299D7 and the vehicle was parked in the assigned spot for that contract. HCR 299D7 is not one of the contracts in issue. The 5500 form that was received by your office did not include the contractor's response. In the completed form, which we have attached, the contractor states that the driver will be more careful and will make sure the vehicle is always locked on postal property. The contractor noted that there was no mail or other Postal Service property in the vehicle at the time. The concern was resolved and no further 5500's were issued on this basis. **SUMMARY: Wrong contract, not a customer service issue, and resolved. (Complete form attached as Exhibit E.)**

- The Postal Service issued a PS Form 5500 dated August 15, 2007 (9 months ago) saying the driver left her vehicle running in the post office parking lot. While the 5500 does not identify a particular contract, the incident involved HCR 299A8, which is not one of the contracts in issue. The contractor responded by saying he spoke to the driver and that the driver assured this would never happen again. Since that time, no further 5500's have

---

been issued on this basis. **SUMMARY: Wrong contract, not a customer service issue, and resolved. (Complete form attached as Exhibit F.)**

In summary, of the five PS Form 5500's included in the supplemental documentation, only one relates to either of the two contracts which were the subject of the non-renewal decision. Of the remaining four 5500s, which concerned different contracts, only one even arguably concerned a customer service issue. All four of the 5500s (which did not involve the contracts at issue here) were minor and resolved, and no further 5500s were submitted on the same basis.

When your office issued its June 9, 2008 decision, it did not have the benefit of a complete file, legible copies of some 5500s, the complete version of three of the five 5500 forms, or the contractor's response. It is therefore requested, in light of this new information, that the appeal of the non-renewal decision be reconsidered and granted. Because the current contracts are set to expire on June 30, your prompt attention is requested. In any case, please advise me immediately if the Postal Service does not intend to reconsider its June 9, 2008 decision or if it intends to exclude the contractor from participation in any future procurements, including any emergency procurements.

Thank you again for your prompt review of this matter. If you have any questions, please do not hesitate to call me on my direct line at (703) 761-0367.

Sincerely,

**AKERMAN SENTERFITT WICKWIRE GAVIN**

David. P Hendel

cc: Ms. Royale Ledbetter
Mr. Russell Sykes
Mr. Todd Fox

December 11, 2007

Mr. George Finney
Postmaster
Bluffton Post Office
Bluffton, SC 29910

Re: Hostile behavior by Calvin Johnson occurring on 12/08/07, at the Bluffton Post Office, Bluffton, SC.

Although I allerted you to this alarming incident on Monday 12/10/07, in person, I am herein providing you in writing, the details of Mr. Calvin Johnson's hostile and demeaning outburst directed at myself, which occurred on Saturday 12/08/07.

On 12/4/07, Calvin Johnson, a supervisor, approached me and informed me that the new start time for all highway contractors and sub-contractors would be 8:00 from now on.

On 12/8/07, I arrived at 7:40 a.m. and approached Mr. Johnson at his desk in the middle of the workroom floor, and explained that according to my contracts, the start time for HCRA8 and HCRC5 was 7:30 a.m. and showed him the contracts. Mr. Johnson looked at the contracts, and the 7:30 start times, and got angry. He loudly replied, "I don't care what the contract says. This is my office." He was hostile and screaming while replying to me, and this was witnessed by numerous clerks, and carriers. At the same time he picked up a 2 to 3 foot long ruler off his desk and held it in the air, and I worried that he might become physically violent. Then Mr. Johnson yelled "You need bodies on all your routes." I replied that "HWY 38 and HWY 39 are extensions and not contracts, and we can look at the schedule in contracts HCR299C5 and HCR299D2 in the file (that contains all HCR contracts ) under part A and partB. He became even more hostile and yelled "Get away from my desk! Go to your case!" and used profanity. I asked him" Did you just use profanity?" and he got even angrier and replied "What profanity?" as if he didn't even realize he had said it. I responded "I'm not going to say it", because I didn't want to use such language. At this point Mr. Johnson was so out of control and I was unsure of what he might do next, that I left his desk area and returned to my case.

Shortly thereafter, several people approached me and said that what they had just witnessed was unacceptable behavior and should not be tolerated in any work place, especially in a Federal Building with a Zero-Tolerance Policy. I agree. We absolutely require, and deserve to be provided a safe, and non-hostile working environment, free from profanity and the threat of verbal and physical harm. That would include a level-headed supervisor who is approachable, open-minded and willing to listen to and address our questions and concerns in a respectable manner. I am requesting your assurance that myself and my drivers will not be harrassed and belittled, cursed at and spoken to in a demeaning or hostile manner in an atomosphere of fear and intimidation, and that behavior and language such as that exemplified by Mr. Johnson, will not be tolerated. The United States Postal

Service Zero Tolerance Policy states that such behavior "will result in severe disciplinary action, up to and including removal from the Postal Service". I am certain that if a contractor or clerk had behaved in such a manner, they would have been escorted out of the United States Postal Service facility immediately, no questions asked. Zero Tolerance.

On a different note, I would like to address Mr. Johnson's demand that I "need a body on all your routes". What Mr. Johnson refused to accept is the fact that I have drivers on all my routes, and have had continuously for the past several years. HWY38 and HWY39 are extensions of two of those routes and do not reqiure separate drivers (or bodies as Mr. Johnson requested). For your information, there are two contractors in the Bluffton Post Office who have more than one route that they both case and run. Ruthie (HCR 25 and HCR 18) cases and delivers two routes by herself everyday. Levi and Doris Gregory (HCR 50 , HCR 52, and HCR 22) case and run 3 routes between the 2 of them everyday. Additionally, two other contractors, Sarah Atkins (HCR8 and HCR51) and Dannell Rubic (HCR17 and HCR13), both have two routes, and although they have a second sorter/driver on most days, do have days where they case and run 2 routes by themselves. As you can see there are 4 other contractors that do not "have bodies on all their routes" as Mr. Johnson has demanded. Mr. Johnson has demanded that I "have bodies on all your routes", therefore I am requesting that these demands either be recinded (because HCR38 and HCR39 are "extensions")or that the same demands be placed on the above mentioned contractors as well. Otherwise, I can reach no other conclusion than that I am being targeted, harrassed and discriminated against.

I am sincerely requesting your help in the above discussed issues (unacceptable behavior by a Post Office Supervisor under the Zero-Tolerance Policy and the equal application of demands to all contractors of a "body on every route" or that this demand be recinded) and respectively request clarification of how these issues are going to be addressed and resolved.

Sincerely,

Todd S. Fox
Contractor

Cc: Ms. Lizbeth Dobbins, District Manager, South Georgia District
Ms Donna Kichen

DISTRICT MANAGER

UNITED STATES POSTAL SERVICE

## PERMANENT BULLETIN BOARD POSTING 00-01

February 1, 2002

MEMORANDUM FOR: All Employees

South Georgia District

SUBJECT: ZERO TOLERANCE POLICY

Acts and threats of violence in the workplace are among the most serious and frustrating problems facing the Postal Service and its employees. Incidents of workplace violence seriously impact the reputation, credibility, and morale of the Postal Service and its employees. In the past, the Postal Service has been inconsistent in the handling of these behavioral issues causing a problem for managers and, in many cases, a greater problem for the employees who are forced to work in an atmosphere of fear and frustration.

Effective immediately, we wish to make absolutely clear to all employees our policy on acts and threats of violence remains as follows:

**THERE WILL BE ZERO TOLERANCE OF ACTS OR THREATS OF VIOLENCE IN OUR WORKPLACE.**

This includes, but is not limited to:

- Any act of physical violence.
- Any actual implied or veiled threat made seriously or in Jest.
- Any type of vulgar language which would lead to a hostile workplace.

This Zero Tolerance Policy places all employees on notice that threats, assaults, or other acts of violence committed against other postal employees or customers will result in severe disciplinary action, up to and including removal from the Postal Service. Any employee who has been subjected to a threat or assault is by this policy instructed to immediately report the incident to a supervisor or manager. Threats of suicide are considered acts of violence.

No one wants to work in an atmosphere of fear and intimidation. A violence free environment serves the interest of both labor and management. We will do whatever it takes to provide that environment. ZERO TOLERANCE is designed to provide you with a workplace in which you can feel safe and secure. You deserve no less!

/S/ Lizbeth J. Dobbins
District Manager
South Georgia District