Akerman Senterfitt
ATTORNEYS AT LAW
Wickwire Gavin

Fort Lauderdale
Jacksonville
Los Angeles
Madison, WI
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

Tysons Corner Office
International Gateway
Suite 700
8100 Boone Boulevard
Vienna, Virginia 22182-7732

www.akerman.com

703 790 8750 *tel* 703 448 1801 *fax*

SENDER'S DIRECT DIAL LINE: (703) 761-0367
SENDER'S EMAIL: david.hendel@akerman.com

June 12, 2008

**BY CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
**AND BY FACSIMILE TO (202) 268-7423**

Ms. Karen A. Pompanella
Acting Manager, Surface Transportation CMC
Supply Management
U.S. Postal Service
475 L'Enfant Plaza, SW
Washington, DC 20260-6210

**Re: Appeal of Non-Renewal Decision in HCR 299C5 and 299D2**

Dear Ms. Pompanella:

This responds to the letter from your office dated June 9, 2008, denying Todd Fox's appeal of the contracting officer's non-renewal decision under HCR Contract Nos. 299C5 and 299D2. As a preliminary matter, after filing our appeal letter I left a voice mail message for Royale Ledbetter, to whom our appeal was addressed. She replied by voice mail that she would contact me when she turned to the matter. I never heard back from Ms. Ledbetter or any other postal official until receipt of the June 9, 2008 letter.

The stated basis for the contracting officer's one-page non-renewal decision was an alleged "lack of attention to customer service issues." (Attachment 1.) The non-renewal decision, however, did not describe, reference, or point to a single instance of such behavior. The non-renewal decision did not even explain what "customer service issues" were involved. Because the contractor was not aware of any "customer service issues," and the non-renewal decision did not describe any, by letter dated May 13, 2008 we asked your office to overturn the non-renewal decision on that basis. (Attachment 2.) Alternatively, we asked that your office direct the contracting officer to describe the specific factual circumstances supporting the decision so the contractor could address them in the appeal procedure.

---

By letter dated June 9, 2008, your office denied Fox's appeal without allowing him a meaningful opportunity to address the merits of the charges against him, as Fox could not respond to unidentified charges. (Attachment 3.) Your office's summary denial similarly failed to address the merits of the non-renewal decision. Your June 9 letter stated only that "the file" had been reviewed and that the decision not to renew was based on "the supplier's documented unsatisfactory performance and poor customer service." As with the initial non-renewal decision, not a single instance of unsatisfactory performance or poor customer service was described. In addition, the contractor was not provided notice of the circumstances concerning these supposed deficiencies, and thus was unable to address them. The "file" that your office reviewed, and the "documented" support stated in the letter was not identified or made available for Fox to review and address.

When an agency creates an internal appeals procedure, the process must provide the respondent with notice of the grounds for its initial decision and a "meaningful opportunity" to address those grounds. *See, e.g*, *Schucker v. F.D.I.C.*, 401 F.3d 1347, 1353 (Fed. Cir. 2005) (an agency must follow its internally established appellate procedures, including notice and the opportunity to respond). Because the non-renewal decision, and the appellate review process, did not provide sufficient notice of the charges against the contractor and a meaningful opportunity to respond, the Postal Service has not met this requirement.

A United States District Court recently overturned an internal Postal Service appellate decision on similar grounds in *Joyce v. Potter*, Case No. 5:06-cv-339-Oc, October 16, 2006, s. (Attachment 4.) In that case, the Postal Service withdrew an HCR contractor's security clearance without providing the contractor "a meaningful opportunity to contest the basis of the U.S. Postal Service's decision." *Id.*, slip op. at pp. 5-6. There, as here, the initial Postal Service decision was a terse, conclusory statement supposedly supporting the grounds for the agency's decision, but without identifying any supporting facts or circumstances. The Postal Service's appellate review authority similarly affirmed the initial decision in the same conclusory fashion. The HCR contractor was not "informed of any evidence against her until she received the denial of her appeal." *Id.*, slip op. at p. 5. The District Court overturned the Postal Service's internal appellate decision, issued an injunction against the Postal Service, and required the Postal Service to provide the contractor a meaningful hearing. Later, the Court awarded the contractor attorney fees, finding that the Postal Service's failure to provide a meaningful hearing was an example of "bureaucratic stonewalling."

Time is running short, as the contracts in question are set to expire on or around June 30, 2008. To avoid the necessity of filing a legal action to obtain a meaningful opportunity to respond to the charges against Fox, it is requested that the non-renewal decision be suspended for 90 days to allow the parties additional time to consider the matter. In the event the contracting officer wishes to proceed with a non-renewal decision, the contracting officer should describe the

---

specific bases for the non-renewal decision and the appellate authority should provide a meaningful opportunity to address the allegations before the expiration of the 90 day period.

Your letter mentioned the existence of a "file" that was reviewed and "documented" instances of unsatisfactory performance. No such material has been provided to Fox. It is hereby requested that a copy of that file and documentation be provided promptly.

Because the current contracts are set to expire on June 30, your immediate and prompt attention to this matter is requested. If you have any questions, or you or your counsel wish to discuss this matter with me, please call me on my direct line at (703) 761-0367.

Sincerely,

**AKERMAN SENTERFITT WICKWIRE GAVIN**

David. P Hendel

Attachments

cc: Stephen Lobaugh, Esq., USPS General Counsel's office
Ms. Royale Ledbetter
Mr. Todd Fox

P.S. After this letter was drafted, you returned my call and we spoke about this appeal. You stated that file had several 5500s in it, and you would fax them to me. You stated that some of the 5500s might be hard to read, so it is requested that legible copies be obtained and provided. You stated that the file had a contacting officer's statement explaining the basis for his action. I asked for a copy of this statement, but you did not know whether you could release it. I hope you decide to release this statement so that we can understand the basis for the non-renewal decision and have a meaningful opportunity to address it. In light of this recent conversation, it is again requested that the effective date of the non-renewal decision be suspended for 90 days so that parties can have sufficient time to resolve this matter.

# EXHIBIT 1

04-19-2008 05:36 FOX 8437579948

TRANSPORTATION CONTRACTING OFFICER
SOUTHEAST AREA OPERATIONS

UNITED STATES POSTAL SERVICE

May 6, 2008

**Express Mail Number: EM 002313077 US**

TODD FOX
225 PINECREST CIRCLE
BLUFFTON SC 29910-7935

Dear Supplier:

SUBJECT: Non-Renewal Decision: HCR 299C5 & 299D2

This letter is to inform you that Highway Contract Routes 299C5 BLUFFTON, SC to TROTTING HILL LANE, SC and 299D2 BLUFFTON, SC to ROSE HILL WAY SC (N.O.), SC will not be renewed. The renewal of a transportation contract is subject to the ability of the Postal Service and the contractor to come to a joint business decision that it would be mutually beneficial to continue the business relationship.

It is noted that the level of service provided during the contract period did not fall to the level which would require that these contracts be terminated for default. Due to your lack of attention to customer service issues and the magnitude of the impact those issues have had on the customers these routes serve, the Contracting Officer has determined that it would not be in the best interest of the Postal Service to continue our business relationship.

The Contracting Officer's decision not to renew is final. You may appeal this decision through the Transportation Contracting Officer to the Next Higher Level Contracting Authority. The appeal must be made within five (5) working days after your receipt of this non-renewal letter. Include the follow documentation in your appeal:

- A copy of the Transportation Contracting Officer's decision to not renew
- A copy of any other related correspondence
- A statement of the reasons why you believe the action taken is erroneous.

Questions on this matter may be addressed to Jo Clemmer of the Highway Contracts staff at 901-747-7435.

Sincerely,

Bobby L. Mays,
Manager, Transportation Contracts

CC: Postmaster – Bluffton, SC

225 NORTH HUMPHREYS BLVD SUITE 4126
MEMPHIS, TN 38166-7071
FAX: 901-747-7484
WWW.USPS.COM

# EXHIBIT 2

Akerman Senterfitt
ATTORNEYS AT LAW
Wickwire Gavin

Fort Lauderdale
Jacksonville
Los Angeles
Madison
Miami
New York
Orlando
Tallahassee
Tampa
Tysons Corner
Washington, DC
West Palm Beach

Tysons Corner Office
International Gateway
Suite 700
8100 Boone Boulevard
Vienna, Virginia 22182-2683

www.akerman.com

703 790 8750 *tel* 703 448 1801 *fax*

May 13, 2008

**Via Facsimile [901-747-7484] and Certified Mail**

Mr. Bobby L. Mays
Transportation Contracting Officer
United States Postal Service
225 North Humphreys Blvd.
Suite 4126
Memphis, TN 38166-7071

Re: Appeal of Non-Renewal Decision Under HCR Nos. 299C5 & 299D2

Dear Mr. Mays:

On behalf of Mr. Todd Fox, this letter appeals the contracting officer's May 6, 2008 Non-Renewal Decision ("Decision") of HCR Nos. 299C5 and 299D2. Please forward this appeal to the Next Higher Level Contracting Authority. The Decision was received by Mr. Fox on May 8, 2008. As requested, a copy of the Decision is attached to this appeal.

**Background on the contractor**

The routes subject to the Decision have for several years, and are presently, operated by the contractor, Mr. Todd Fox and his wife Janet Fox. They also employ a long time postal subcontractor who has worked for the contractor for the past several years and was previously employed by other contractors at the Bluffton Post Office for many years before that. These individuals are experienced postal contractors and subcontractors who between them have a combined work experience with the United States Postal Service of approximately 20 years. Performing HCR contracts is their only livelihood. They take great pride in their knowledge of postal operations, performance of their job responsibilities, and the satisfaction of the postal customers they serve. All of these individuals have a good working relationship with the Postmaster, Mr. George Finley, and the customers along their routes.

## The Non-Renewal Decision

By letter dated May 6, 2008, received by the contractor on May 8, 2008, the Manager for Transportation Contracts in the Southeast Area issued a decision not to renew HCR Contract Nos. 299C5 and 299D2. The Decision states the following as the only grounds for non-renewal:

> "It is noted that the level of service provided during the contract period did not fall to the level which would require that these contracts be terminated for default. Due to your lack of attention to customer services issues and the magnitude of the impact those issues have had on the customers these routes serve, the Contracting Officer has determined that it would not be in the best interest of the Postal Service to continue our business relationship."

The contractor's "lack of attention to customer service issues" is the only stated basis for the non-renewal Decision. The Decision does not cite a single specific instance of such behavior, nor are there any attachments or other documents that accompany or supplement the Decision.

## Grounds for Appeal

The non-renewal Decision should be rescinded because the single rationale put forward is vague, unrelated to any contract performance requirement, and unsupported by even a single example. Only one-sentence of the non-renewal Decision addresses why the contracts will not be renewed. And that single sentence says only that the grounds for non-renewal is the contractor's supposed "lack of attention to customer service issues." The Decision does not describe a single instance of a "lack of attention to customer service issues." For example, there are no references to any customer complaints, postmaster complaints, Irregularity Notices (PS Form 5500), contract correspondence, or any specific example where the contractor failed to provide sufficient attention to customer service issues under these contracts. Neither does the Decision describe what is meant by the term "customer service issues" nor what "attention" the contractor failed to give to such issues. Neither Todd Fox, Janet Fox, nor their subcontractor are aware of any reason why these contracts should be the subject of a non-renewal decision. Bluffton is a facility where any customer service issue would be addressed by a postal supervisor or the Postmaster as it arose, so the contractor would have known if there were any unresolved customer service issues, and would certainly have been aware of such issues if they reached the magnitude that would support a non-renewal decision. They are not aware of any such issues.

The lack of any detail in the non-renewal Decision is sufficient grounds, standing alone, for the Next Higher Level Contracting Authority to sustain this appeal. For an appeals procedure to be effective, the non-renewal decision must give sufficient notice of the reasons for the non-renewal decision and the grounds supporting them. Otherwise, neither the contractor nor the Next Higher Level Contracting Authority can address and assess the reasonableness of the non-

renewal decision. The contractor cannot address unspecified or vague accusations concerning supposed performance deficiencies that are not described. Moreover, the contractor believes there are no grounds for a non-renewal decision. In addition, the Next Higher Level Contracting Authority cannot assess the merits of the non-renewal Decision when there are no specific charges or information to review. Thus, the non-renewal Decision should be vacated and the matter concluded. It is hoped that this will end the matter and the contracting officer will determine not to issue another non-renewal Decision. In the event one is issued, it should set out specific reasons and cite specific contractor actions which support the grounds for the decision.

Finally, it should be noted that the parties are currently in litigation before the PSBCA on the propriety of the termination of HCR Contract Nos. 299B3 and 299A9. The non-renewal Decision did not reference the existence of this litigation as grounds for the non-renewal Decision, and it would have been improper, illegal, and a breach of contract to base a non-renewal Decision or retaliate on such grounds.

In conclusion, since no specific or supportable grounds have been cited for the non-renewal Decision, it is requested that this appeal be granted and the non-renewal Decision rescinded.

Thank you for your attention to this matter. Should you have any questions, please feel free to contact the undersigned.

Sincerely,

AKERMAN SENTERFITT WICKWIRE GAVIN

David P. Hendel
Sarah M. Graves

Attachment

cc: Mr. Todd Fox, Contractor
George R. Finley, Bluffton S.C. Postmaster
Stephen Lobaugh, Esq.

# EXHIBIT 3

SUPPLY MANAGEMENT

UNITED STATES POSTAL SERVICE

June 9, 2008

Ms. Sarah M. Graves, et al
c/o Mr. Todd Fox
8100 Boone Boulevard
Suite 700
Vienna, VA 22182-2683

Dear Ms. Graves:

Your appeals on behalf of Todd Fox of the decision by the Contracting Officer not to renew Highway Contract Routes 299C5 and 299D2 has been properly forwarded to this office for adjudication.

The renewal of transportation contracts is subject to the ability of the Postal Service and the supplier to come to a joint business decision that would be mutually beneficial to continue the business relationship. From the file, the Contracting Officer's decision not to renew these contracts was based on the supplier's documented unsatisfactory performance and poor customer service.

In adjudicating non-renewal appeals, I will not overturn a decision by a Contracting Officer unless there is clear and convincing evidence that the decision was capricious, arbitrary, or in violation of postal regulations. Neither the file materials nor any information provided by your client suggests such actions on the part of the Contracting Officer. Therefore, your appeal is denied.

Sincerely,

Karen A Pompanella

Karen A. Pompanella
Acting Manager
Surface Transportation CMC

RECEIVED JUN 11 2008

475 L'ENFANT PLAZA SW
WASHINGTON DC 20260-6210
WWW.USPS.COM

# EXHIBIT 4

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

LINDA M. JOYCE,

Plaintiff,

-vs- Case No. 5:06-cv-339-Oc-10GRJ

JOHN E. POTTER, POSTMASTER GENERAL, in his official capacity, and UNITED STATES POSTAL SERVICE,

Defendant.

---

**ORDER**

This case is before the Court for consideration of the Plaintiff's Motion for Preliminary Injunction (Doc. 3), to which the U.S. Postal Service has responded (Doc. 8). The Plaintiff's motion was argued in open court on October 6, 2006, and is ready for decision. The court concludes that the motion is due to be granted in part and denied in part as stated in this Order.

**Background & Facts**

The Plaintiff is a U.S. Postal Service box delivery contractor, and currently holds two U.S. Postal Service contracts for the delivery of the mail. The Plaintiff is not an employee of the U.S. Postal Service. However, the Plaintiff personally performs one of the delivery contracts and employs a third party to perform the other contract.

In 1997, the Plaintiff was the subject of a U.S. Postal Service investigation concerning the alleged rifling of a package. Although she was suspended for

approximately one month during the investigation, the Plaintiff was allowed to regain access to the mail and personally perform one of her contracts until June 30, 2006. On that date, the Plaintiff received a letter from the U.S. Postal Service suspending the Plaintiff from access to the mail because she "was the subject of an Inspection Service investigation." Although it was not stated in the letter, it is undisputed that the investigation underlying the Plaintiff's current suspension is the 1997 investigation.

On July 7, 2006, the date the Plaintiff received the letter of suspension, she sent a response to the Postal Service Inspector handling her suspension, and explained that the she was cleared of any wrongdoing concerning the 1997 incident and was reinstated following her 1997 suspension. The Plaintiff alleges that she was orally informed that her appeal of her suspension would not be granted because she did not include the statement, "I hereby appeal" in her July 7 letter. Accordingly, the Plaintiff sent a letter dated July 29, 2006, again contesting her suspension, and including the declaration, "I hereby appeal."

The Inspection Service issued its official denial of the Plaintiff's appeal via a letter dated September 1, 2006. In its letter of denial, the Inspection Service stated that "it would be inconsistent with U.S. Postal Service security interests to grant you a security clearance." The denial was based upon the existence of the 1997 investigation as well as a 1997 letter from the Plaintiff's supervisor issued in conjunction with the investigation that recommended that the Plaintiff not be allowed to hold a U.S. Postal Service contract in the future. Thus, as a result of the Inspection Service's determination to revoke her security clearance, the Plaintiff has been restricted from access to non-public areas of the post

office and from access to the mail, preventing her from personally performing the delivery contracts she holds. The Plaintiff still holds two contracts, but is now required to hire someone to perform the contract that she had previously personally performed.

On September 21, 2006, the Plaintiff filed the Verified Complaint for Injunctive Relief, alleging three counts, titled "Due Process Violations" (Count I), "Liberty and Property Interest Violations" (Count II), and "De Facto Disbarment" (Count III). On the same date, the Plaintiff filed her motion for a preliminary injunction, seeking an injunction: "(1) declaring that the Inspection Service's suspension and withdrawal of Joyce's access to the mail is invalid and in violation of her due process rights; (2) rescinding the Inspection Service's June 30, 2006 and September 1, 2006 letters denying Joyce access to the mail; and (3) granting further relief to Joyce as the Court deems just and equitable."

## Discussion

A preliminary injunction should only be granted where the movant carries the burden of persuasion as to four prerequisites: (1) that the movant has a substantial likelihood of success on the merits; (2) that there is a substantial threat plaintiff will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may cause to the defendant; and (4) that granting the preliminary injunction will not be adverse to the public interest.[1]

[1] See Warren Publ'g, Inc. v. Microdos Data Corp., 115 F.3d 1509, 1516 (11th Cir. 1997).

*Substantial Likelihood of Success on the Merits*

First, the Plaintiff has carried her burden to persuade the Court that she has a substantial likelihood of success on the merits of a claim for the deprivation of her liberty interest in her reputation without due process of law.[2] Although the Plaintiff may not hold a property interest in a security clearance, "a federal agency's revocation of a security clearance may give rise to a due process claim for injury to a liberty interest in reputation."[3] A plaintiff may state a claim for the deprivation of her liberty interests if she can establish that the government both altered her status and stigmatized her reputation without due process of law.[4] An alteration of status may occur by various actions, including the loss of employment, foreclosure of future employment activities, or a reduction in pay.[5] Moreover, a party's loss of private employment by a government contractor due to the revocation of a security clearance has been held to be a sufficient alteration by the government to invoke due process liberty rights.[6] Stigma occurs when "the government's conduct forecloses an employee's freedom to take advantage of other employment opportunities by either "(a)

---

[2] As stated in this Order, the Plaintiff has no property interest in her security clearance and, thus, she has no chance of success on the merits of her claimed due process violations regarding the deprivation of a purported property interest in her security clearance. Accordingly, the Court's analysis will focus on the Plaintiff's claims for deprivation of her liberty interest.

[3] Ranger v Tenet, 274 F. Supp. 2d 1, 7-8 (D.D.C. 2003); see also Doe. v. Casey, 796 F.2d 1508, 1522 (D.C. Cir. 1986); Kartseva v. Dep't of State, 37 F.3d 1524 (D.C. Cir. 1994).

[4] See Doe v. Cheney, 885 F.2d 898, 909 (D.C. Cir. 1989).

[5] See Casey, 796 F.2d at 1523; Ranger, 274 F. Supp. 2d at 8-9.

[6] See Kartseva, 37 F.3d at 1527-28.

automatically excluding him from a definite range of employment opportunities with the government or (b) broadly precluding him from continuing his chosen career."[7]

Here, it is undisputed that the revocation of the Plaintiff's security clearance has prevented her from personally performing at least one of the postal delivery contracts she holds with the U.S. Postal Service. As a result, the Plaintiff has been required to employ someone - at her own expense - to complete performance of the delivery contract. Further, although it is not clear from the record, the Plaintiff has alleged and the Court is persuaded at this point in the litigation that the revocation of the Plaintiff's security clearance will prevent her from holding any future delivery contracts. In addition, the action of the U.S. Postal Service has ended the Plaintiff's 14-year career as a mail carrier and, as such, has both automatically excluded the Plaintiff from a definite range of employment opportunities with the government and has precluded her from pursuing her chosen career.

Finally, the evidence currently before the Court suggests that the U.S. Postal Service suspended the Plaintiff and revoked her security clearance without notice. Although the U.S. Postal Service allowed the Plaintiff to appeal, it appears that the appeal consisted solely of a second unilateral review of the Plaintiff's file, followed by a letter of denial. Further, the Plaintiff was not informed of any evidence against her until she received the denial of her appeal.[8] Thus, the Court finds that the Plaintiff did not have a meaningful

---

[7] M.K. v. Tenet, 99 F. Supp. 2d 12, 27 (D.D.C. 2000).

[8] Indeed, the Plaintiff's counsel represented without contradiction that the Plaintiff received (continued...)

opportunity to contest the basis of the U.S. Postal Service 's decision to revoke her security clearance.

*Irreparable Injury*

Second, the Plaintiff has carried her burden to persuade the Court that there is a substantial threat that she will suffer irreparable injury if an injunction is not granted. The Plaintiff has proffered undisputed allegations that her reputation and good will is being irreparably damaged by the revocation of her security clearance and the resulting suspension of her ability to perform her contracts.[9] Moreover, the Plaintiff, through her affidavit, has presented evidence that U.S. Postal Service officials are giving customers on her route incorrect information regarding her suspension and are making statements damaging to her reputation.

*Threatened Injury to the Plaintiff Outweighs Any Harm to the U.S. Postal Service*

Third, because the Court is issuing this preliminary injunction for the sole purpose of holding a name-clearing hearing, the Plaintiff has carried her burden to persuade the Court that the threatened injury to the plaintiff outweighs the threatened harm the injunction may cause to the Defendant. In a case such as this, where a plaintiff is seeking relief for the deprivation of a liberty interest in reputation without due process of law due to the

---

[8](...continued)
much of the evidence against her for the first time on the eve of the hearing on before the Court.

[9] See United Healthcare Ins. Co. v. AdvancePCS, 316 F.3d 737, 741 (8th Cir. 2002) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury.").

revocation of a security clearance, the typical remedy is the provision of a "name-clearing" hearing. Such a hearing is what the Court deems appropriate here. Thus, the Court finds that under the circumstances of this case, the continuing damage to the Plaintiff's reputation outweighs the cost to the Defendant of affording the Plaintiff the process she is due.

*The Public Interest*

Fourth, the Plaintiff has carried her burden to persuade the Court that granting the preliminary injunction will not be adverse to the public interest. The Court is only directing that the Plaintiff have the opportunity to clear her name. Such relief is in no way adverse to the public interest. The Court emphasizes that it is not holding that the Plaintiff may have access to the mails and is not encroaching on the U.S. Postal Service's ability to determine to whom it will issue security clearances.

**Conclusion**

Accordingly, it is hereby ORDERED and ADJUDGED as follows:

(1) The Plaintiff's Motion for Preliminary Injunction (Doc. 3) is GRANTED to the extent provided in paragraphs (2), (3),(4) and (5) and is otherwise DENIED;

(2) That the Defendant is hereby ENJOINED and DIRECTED, within ten days of the entry of this order, to rescind its letter dated September 1, 2006, denying plaintiff Linda Joyce's appeal of the suspension letter dated June 30, 2006;

(3) That the Defendant is hereby further ENJOINED and DIRECTED, within thirty (30) days of the entry of this order, to reconvene a meeting of its Security Review

Committee ("SRC") upon written notice to plaintiff, transmitted not less than seven days before the meeting, and to permit plaintiff both to appear at the meeting (with counsel if she so chooses) and to present argument directed to the merits of plaintiff's appeal. The SRC shall consider the appeal de novo and, within seven days after its meeting, shall render its decision in writing, setting forth a brief explanation of the reasons for its decision. If plaintiff or her counsel or both wish to participate in the SRC proceeding by telephone, then they may do so by providing the necessary contact numbers to counsel for defendant, Mr. Zimmerman, reasonably in advance of the proceeding.

(4) No later than 45 days after entry of this order, the parties SHALL FILE a joint, written notice of the status of plaintiff's administrative appeal and this civil litigation.

(5) Except as set forth above, the Court makes no order with respect to plaintiff Linda Joyce's security clearance, if any, or her access or lack of access to the mails during the renewed pendency of her administrative appeal.

(6) The Plaintiff is not required to post a bond pursuant to Federal Rule of Civil Procedure 65(c) in regard to the entry of this preliminary injunction.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 16th day of October 2006 at 5:00 p.m. Eastern Daylight Time.

W. Terrell Hodges

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record