**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **TODD FOX** | ) | **BID PROTEST** |
| **Plaintiff,** | ) | |
| **v.** | ) | **Fed. Cl. No. 08-465C**<br>**(J. Bruggink)** |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION FOR FINAL JUDGMENT**

Plaintiff Todd Fox ("Fox") hereby moves for final judgment. In a June 30, 2008 declaration, the contracting officer stated that he has rescinded the two emergency solicitations he issued for the re-procurement of Fox's non-renewed contracts. (The documentation, if any, that demonstrates this action occurred did not accompany the declaration.) Rather than dismiss the case, Fox seeks an order of final judgment for two reasons: (1) the need for a binding and legally enforceable order to prevent recurrence in light of the agency's past arbitrary conduct; and (2) the need for a Court order to eradicate the effects of the agency's improper conduct. A proposed Order is attached.

First, Fox seeks an Order to ensure that the contracting officer's voluntary remedial action, as described in the contracting officer's affidavit, is binding and carries the force and effect of law. The Postal Service has acted arbitrarily and without due regard for law toward plaintiff since its initial May 6, 2008 non-renewal decision. As described in the Complaint and the Todd Fox affidavit, both of which stand unrebutted by Defendant, the Postal Service had no supportable basis for its non-renewal decision or for its appellate review upholding that decision. When the Postal Service finally released the "file" that supposedly supported its actions toward

Fox, the file was illegible, incomplete, and barren of support. To make matters worse, the Postal Service interfered with Fox's contract by secretly contacting his employees, telling them they would be out of a job, and soliciting bids from his employees—but not Fox. This was all known to the agency's highest level decision-makers, including its General Counsel's office, well before this action was commenced. Only when these actions were brought before a court of law did the Postal Service finally begin to change its course of action, and even then only equivocally. Instead of canceling outright the improper emergency solicitations, the agency told offerors that "no award will be made *at this time*." (Doc. No. 9, Defendant's Opposition, June 26, 2008, Exhibit A, emphasis added.) Defendant then contended that this equivocal statement amounted to full relief.

While the Postal Service's voluntary change in conduct is greatly welcomed, it is only a few days old. In light of the past history of this matter, where it treated Fox arbitrarily and improperly for weeks, even when it knew all of the true facts, it cannot be said that Plaintiff has no reasonable expectation that the improper conduct will not recur. The Postal Service's voluntarily action also contains no admission that it acted improperly in any way toward Fox. It is thus not surprising that Plaintiff seeks a legally binding court order in this matter.

Second, only a legally enforceable Court order can eradicate the effects of the improper conduct by the Postal Service, and thus the Postal Service's voluntarily actions, which contain no admission of improper conduct, do not make this case moot. *See, e.g., Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (cited in *Rice Servs. v. United States*, 405 F.3d 1017, 1019 n.3 (Fed. Cir. 2005)). As discussed in *Davis*, a case becomes moot only if: (1) there is "no reasonable expectation" that the improper conduct will recur; *and* (2) "events have completely and irrevocably eradicated the effects of the alleged violation." 440 U.S. at 631. For example, in

*Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1274 (9th Cir. 1998), the agency's voluntary cessation of illegal conduct did not moot out the case because its action did not completely eradicate the effects of that conduct.

Here, part of the improper conduct by the agency was secretly contacting Fox's employees, telling them they would be unemployed, and then soliciting bids from them, but not from Fox. One of the effects of this improper conduct was that it undermined and damaged Fox's relationship with his employees, and shook their confidence in their employer. (Fox Affidavit, ¶¶ 16–18, 23.) The contracting officer's subsequent voluntary remedial action in rescinding the solicitations without acknowledging that the agency acted improperly does not "completely and irrevocably eradicate" the taint and lingering effects of this improper conduct. From the perspective of Fox's employees, the agency has merely changed its mind: no agency official has admitted it acted improperly, no court has determined that the agency's action was unlawful, and no court has required it to cancel the emergency solicitation and throw out the bids it received. From the employee's perspective, since the agency voluntarily changed direction without any admission of prior wrong-doing, it could just as easily some time later change direction again, and even reinstate the cancelled solicitations.

Without an agency statement admitting to improper conduct, and a legally binding court order to back him up, Fox's employees will likely believe that Fox is still subject to the arbitrary whims of the contracting officer. Thus, the taint the agency created by going behind Fox's back will not be "completely eradicated" simply by the contracting officer's rescinding the emergency solicitation, particularly when no agency official has told Fox's employees that the agency acted improperly. In these circumstances, having the Court issue an order of final judgment would

eradicate the effects of the agency's improper action in a way that voluntary action by the causative agency officials cannot.

Issuance of an order of judgment would also make Fox eligible to apply to this Court for attorney fees under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A). EAJA has been interpreted by the Federal Circuit as requiring some kind of court action that materially changes the legal relationship between the parties. *See Brickwood Contractors, Inc. v. United States*, 288 F.3d 1371, 1378 (Fed. Cir. 2002); *Rice Servs.*, 405 F.3d at 1025–26. The Court's June 27, 2008 Order might already be a sufficient action in this regard, because it did change the legal relationship between the parties. To eliminate any uncertainty, however, the Court should issue final judgment on the two bases described above.

If any case cries out for a clear statement of eligibility for EAJA fees, this case surely does. Everything that is now before the Court was before not only the contracting officer, but also the next higher level contracting authority, the National Manager of Mail Transportation, and the USPS General Counsel's office—well before this case was filed. *See, e.g.*, Fox Affidavit, Exhibits C, E, and F. The Postal Service stonewalled, would not listen to reason, and refused to budge an inch. There should have been no need for Plaintiff to bring this matter to the Court's attention. In such unique circumstances, this action does not suddenly become moot and the harm "completely and irrevocably eradicated" simply because the agency had a TRO conversion.

The agency's prior conduct in this matter, its arbitrary actions, its refusal to listen to reason, its initial provision of only equivocal relief, its failure to advise Fox's employees that it took an improper action against Fox, and the lingering harm caused by these improper actions, all compel the Court to dispose of this case by a legally enforceable order and not by dismissal.

July 1, 2008

Respectfully submitted,

__s/David P. Hendel______
David P. Hendel
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Suite 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 - fax

***Counsel for Todd Fox***

*Of Counsel:*
Sarah M. Graves
**AKERMAN SENTERFITT WICKWIRE GAVIN**
8100 Boone Blvd., Ste. 700
Vienna, Virginia 22182
(703) 790-8750 - phone
(703) 448-1767 – fax