**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| TODD FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 08-465C |
| v. | ) | (Senior Judge Bruggink) |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S**
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to Rule 65 of the Rules of the Court of Federal Claims, defendant, the United States, respectfully submits the following brief in opposition to the application for a temporary restraining order filed by plaintiff, Mr. Todd Fox, concerning contracts for mail service issued by the United States Postal Service ("USPS").[1] As we discuss below, USPS has rendered moot Mr. Fox's complaint by offering to extend Mr. Fox's original contracts until September 30, 2008. Furthermore, even if the Court were to conclude that the case is not moot, the Court should decline jurisdiction because Mr. Fox has not exhausted the internal review process. Finally, if the Court were to reach the merits of Mr. Fox's request for a temporary restraining order ("TRO"), the Court should deny the request because Mr. Fox has not satisfied the traditional requirements for preliminary injunctive relief.

**STATEMENT OF FACTS**

Mr. Fox requests a TRO to prevent USPS from "proceeding with and excluding the Plaintiff from the re-procurement of four Contract Delivery Service ("CDS") contracts in

[1] Because the administrative record has not yet been filed in this action, we reserve the right to supplement our discussion of the facts in our brief upon the merits of plaintiff's complaint.

Blufton, South Carolina." Pl. Mot. TRO (June 25, 2008) at 1. The contracts are HCR 299C5 and 299D2; the extensions of those contracts are HCR 299D7 and 299D8. Complaint ¶ 17. Mr. Fox is currently the incumbent contractor for these contracts, which are scheduled to expire on June 30, 2008. Complaint ¶¶ 17, 20. USPS decided not to exercise its option to renew these contracts.

Mr. Fox appealed the non-renewal decision of these two contracts using USPS's internal review procedure. See Complaint ¶¶ 16 (containing contract clause), 24. After this internal appeal, on June 9, 2008, USPS affirmed the decision not to renew the contracts with Mr. Fox, citing "the supplier's documented unsatisfactory performance and poor customer service." See Fox Affidavit (June 25, 2008), Exh. D. Mr. Fox sent two additional letters to USPS seeking reconsideration of the non-renewal decision. Fox Affidavit, Exh. D, E.

USPS solicited several proposals for emergency contracts to replace Mr. Fox's expired contracts. USPS intended to use these emergency contracts for a period of up to six months, during which time it would have conducted a competitive solicitation for full four-year contract for these routes. USPS did not contact Mr. Fox to solicit a proposal for these emergency contracts. Pl. Mot. TRO at 3. Mr. Fox does not allege that USPS formally barred him from submitting a proposal for the emergency contracts, but alleges that USPS demonstrated an "intention to exclude him from the procurement" because it "has never contacted Fox about bidding on the reprocurement, nor was the opportunity publicized." Id. USPS also received proposals from other parties who were not contacted by USPS.

Mr. Fox filed his complaint with this Court on June 25, 2008. In his complaint, Mr. Fox requests a TRO (1) "prohibiting the Postal Service from proceeding further with its current

reprocurement," (2) "requiring the Postal Service to allow Fox to participate in any reprocurement," (3) applying equal "standards of evaluation to Fox," (4) instructing USPS to "inform Fox of any reason why it intends to exclude or not solicit Fox or negatively evaluate his past performance"; and (5) instructing USPS to "rescind the non-renewal decision." Pl. Mot. TRO at 6-7. On June 26, 2008, USPS decided to offer Mr. Fox an extension of the original contracts until September 30, 2008, during which time USPS will conduct a solicitation of a new four-year contract for these routes. See Email from Contracting Officer Mays (June 26, 2008) (attached as Exhibit A). This response follows.

## ARGUMENT

Mr. Fox's motion for a TRO should be denied for three principal reasons. First, Mr. Fox's complaint is moot because USPS now has offered to extend Mr. Fox's original contracts. Second, even if the Court decides that the complaint is not moot, the Court should decline to exercise jurisdiction because Mr. Fox did not avail himself of the internal USPS appeal process that he followed for the original non-renewal. Third, even if the Court chooses to reaches the merits of Mr. Fox's complaint, Mr. Fox cannot satisfy this Court's requirements for preliminary injunctive relief.

### A. Mr. Fox's Complaint Is Moot Because USPS Has Offered To Extend Mr. Fox's Original Contracts

USPS has offered to extend Mr. Fox's original contracts, which renders his complaint moot. On June 26, 2008, USPS contacted Mr, Fox and offered to extend the two contracts it had chosen not to renew until the conclusion of a competition for a new four-year contract for these routes. See Email from Contracting Officer Mays (June 26, 2008) (attached as Exhibit A).

USPS has decided to offer Mr. Fox an extension of the current contracts until September 30, 2008. Mr. Fox will also be permitted to submit a proposal for the new four-year contract during this period.

This offer by USPS renders moot all of the relief Mr. Fox requested in his complaint. Indeed, USPS has granted more relief to Mr. Fox than this Court could through its bid protest jurisdiction because USPS has offered to extend Mr. Fox's contracts, rather than giving him the opportunity to submit a proposal for the emergency contracts. Thus, the Court should dismiss Mr. Fox's complaint as moot.

None of the relief Mr. Fox requests in his complaint survives. Any claims for relief with respect to the emergency contracts are moot because there will be no emergency contracts. Rather, USPS has offered to extend Mr. Fox's original contracts. Mr. Fox's requests for orders from the Court: (1) "prohibiting the Postal Service from proceeding further with its current reprocurement;" (2) "requiring the Postal Service to allow Fox to participate in any reprocurement;" (3) applying equal "standards of evaluation to Fox;" (4) instructing USPS to "inform Fox of any reason why it intends to exclude or not solicit Fox or negatively evaluate his past performance;" and (5) instructing USPS to "rescind the non-renewal decision" are thus moot. Pl. Mot. TRO at 6-7.

Moreover, Mr. Fox's requests for relief concerning USPS's consideration of his past performance are moot because Mr. Fox will have the opportunity to document his past performance at such time as he submits a proposal for the new four-year contract. Mr. Fox will have the opportunity to submit a proposal for the new four-year contract upon the same terms as other offerors. Furthermore, if Mr. Fox believes that USPS did not properly consider his past

performance when he submits a proposal for the new contract, he could lodge any appropriate protests at that time.

Lastly, Mr. Fox's requests for relief regarding "standards of evaluation" and whether USPS will "negatively evaluate his past performance" are also improper because they amount to requests for an advisory opinion from this Court. According to the plain language of the statute, this Court may award declaratory or injunctive relief to a party objecting to a "solicitation," a "proposed award" or "the award of a contract." 28 U.S.C. § 1491(b)(1) & (2). However, "federal courts do not sit to render advisory opinions." Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1470 (Fed. Cir. 1997). Because there is no current reprocurement, any such request amounts to a request for an advisory opinion and is therefore moot.

**B. The Court Should Decline Jurisdiction Because Mr. Fox Did Not Exhaust The Available Administrative Remedies**

Even if the Court concludes that the case is not moot, the Court should choose to decline jurisdiction because Mr. Fox has failed to exhaust the Postal Service's prescribed administrative remedies with respect to the emergency contracts. USPS's current procurement regulations, which took effect on November 15, 2007, create an internal appeal process for USPS procurements. See 39 C.F.R. § 601.107-08. The regulations state that, "All disagreements arising in connection with the purchasing process must be lodged with the responsible contracting officer . . . ." 39 C.F.R. § 601.107(b). The regulations provide for an appeal of such decisions to a Supplier Disagreement Resolution ("SDR") official. See 39 C.F.R. §§ 601.108; see also Complaint ¶ 16 (containing contract clause for appeal).

Here, Mr. Fox availed himself of these administrative remedies for the non-renewal of the contracts, but has not done so with respect to the emergency contracts. See Complaint ¶¶ 22-31; Fox Affidavit ¶¶ 7-15. Although USPS merely did not invite Mr. Fox to submit a proposal, as opposed to prohibiting him from doing so, Mr. Fox had the option of following the internal appeal process within USPS rather than filing this action. Correspondingly, the Court should decline to exercise jurisdiction over Mr. Fox's complaint until he avails himself of these administrative remedies.

**C. Mr. Fox Cannot Satisfy The Standards For Preliminary Injunctive Relief**

Even if the Court were to reach the merits of Mr. Fox's TRO request, Mr. Fox has not satisfied the four traditional factors for preliminary injunctive relief. Correspondingly, Mr. Fox's request should be denied.

**1. Standard Of Review**

In a procurement-related challenge, the Court assesses the agency's decision pursuant to the review standard of the Administrative Procedure Act, 5 U.S.C. § 706(2), as incorporated by the Tucker Act, 28 U.S.C. § 1491(b)(4). RAMCOR Servs. Group, Inc. v. United States, 185 F.3d 1286, 1291 (Fed. Cir. 1999). Application of the arbitrary and capricious standard involves neither judicial fact finding, nor review of the agency's factual statements for "substantial evidence." See Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000). Rather, the Court will sustain an agency decision "evincing rational reasoning and consideration of relevant factors." Id. at 1058.

Injunctive relief for a disappointed bidder is appropriate "'only in extremely limited circumstances.'" CCL Serv. Corp. v. United States, 48 Fed. Cl. 113, 120 (2000) (quoting CACI,

Inc. v. United States, 719 F.2d 1567, 1581 (Fed. Cir. 1983)). In order to obtain a temporary restraining order, a plaintiff must carry the burden of establishing entitlement to this extraordinary relief by clear and convincing evidence based upon the following factors: (1) a likelihood of success on the merits; (2) that the plaintiff will suffer irreparable injury if injunctive relief is not granted; (3) that, if the injunction is not granted, the harm to the plaintiff will outweigh the harm to the Government and third parties; and (4) that granting the injunction serves the public interest. Bean Stuyvesant, L.L.C. v. United States, 48 Fed. Cl. 303, 320-21 (2000); PGBA, LLC v. United States, 57 Fed. Cl. 655, 657 (2003). But see Bannum, Inc. v. United States, 60 Fed. Cl. 718, 723-24 (2004) (applying a preponderance of the evidence standard).

The decision whether to grant an injunction is within the sound discretion of the trial court. FMC Corp. v. United States, 3 F.3d 424, 427 (Fed. Cir. 1993). In evaluating whether an agency official's actions were rational, the "disappointed bidder bears a 'heavy burden' of showing that the award decision 'had no rational basis." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1333 (Fed. Cir. 2001).

### 2. Mr. Fox Has Not Demonstrated A Likelihood Of Success

Mr. Fox has not demonstrated a likelihood of success for his request for a TRO because he has not pointed to any statute or regulation that USPS allegedly violated in choosing not to invite Mr. Fox to submit a proposal for the emergency contracts. As provided in 39 U.S.C. § 410, "no Federal law dealing with public of Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service." 39 U.S.C. § 410; see also Emery Worldwide

Airlines, Inc. v. United States, 264 F.3d 1071, 1085 (Fed. Cir. 2001) (applying APA standard of review to USPS under 28 U.S.C. § 1491).[2] Instead, USPS uses its own regulations. See 39 C.F.R. § 601.100, et seq.. Mr. Fox does not identify or allege any violation of any statute or these regulations. Therefore, Mr. Fox has not demonstrated a likelihood of success.

Mr. Fox does point to sections of USPS's Supplying Principles and Practices ("SPP") in his complaint. See Complaint ¶¶ 11-16. Mr. Fox concedes that "the SPP was not issued as a formal regulation," but contends that "it serves as the agency's *de facto* procurement regulations . . . ." Id. ¶ 12. We do not take a position at this time regarding whether the SPP has the force of a regulation other than to note that Mr. Fox does not point to any specific provision of the SPP that USPS allegedly violated in dealing with Mr. Fox's non-renewal or the subsequent proposals. For example, Mr. Fox does not identify any section of the SPP dealing with what potential suppliers USPS should contact or what consideration, if any, USPS should give to past performance in evaluating such proposals. Mr. Fox thus has not demonstrated a likelihood of success upon the merits.

### 3. Mr. Fox Would Not Suffer Irreparable Harm

Although the question of irreparable harm is now moot, even if USPS had not offered to extend the contracts, Mr. Fox would not have suffered irreparable harm. Mr. Fox would not suffer irreparable harm by not having the contracts during the pendency of the bid protest. Because the current contracts were set to expire on June 30, 2008, there is no presumption that

[2] We note that the Emery Court applied the standard of review from the APA to USPS, but noted that neither party in the case had contested whether the APA standard of review should apply to USPS. We take no position upon this issue at this time, other than to note that USPS's decisions complied with the APA standard of review in any event.

Mr. Fox should be the contractor beyond this date. Thus, even if Mr. Fox were to prevail upon the merits of whether he should be permitted to submit a proposal for the new contracts, he did not have a contractual right to continue under the original contracts after their expiration date.

Moreover, the new emergency contracts would prevent irreparable harm to Mr. Fox because Mr. Fox could begin work under the emergency contracts immediately upon the conclusion of any bid protest. The emergency contracts, by design, may be terminated by USPS with 24 hours' notice. Thus, in the event that the Court ultimately rules for Mr. Fox in the underlying protest, Mr. Fox would be able to participate in any resolicitation of these contracts and could begin work immediately upon the issuance of a new contract. Mr. Fox will also be able to participate in the competition for the full four-year contract to be solicited during the emergency contract period. Thus, Mr. Fox would not suffer irreparable harm if the Court were to decide the underlying bid protest without a TRO.

#### 4. The Balance Of Harms Would Favor The Government

Third, if USPS had not offered to extend Mr. Fox's contracts, and the Court were to order a TRO prohibiting reprocurement, the balance of harms would tip strongly in favor of the Government. After June 30, 2008, USPS would not have a contractor to deliver the mail for the regions covered by these contracts. USPS could not conduct another solicitation for these contracts prior to this deadline. If the Court grants the TRO, USPS would either be required to take extraordinary steps to find replacement service, or, potentially, suffer a disruption of service. Mr. Fox, on the other hand, would not be harmed because, as discussed above, he did not have a contractual right to continue with the original contracts after June 30, 2008. Thus, the

Government may suffer harm from a TRO that would disrupt service, but Mr. Fox would not be harmed.

### 5. The Public Interest Favors Denial Of The TRO

Lastly, even if the Court reaches the merits of the dispute, the public interest favors the denial of a TRO. Assuming that USPS had not offered to extend Mr. Fox's original contracts, if the Court were to enter a TRO prohibiting USPS from issuing emergency contracts until such time as Mr. Fox had submitted a proposal, this would potentially result in a disruption to USPS's consideration of the emergency contract proposals. Given the short time frame between the filing of the complaint and the expiration of the original contracts on June 30, 2008, such a disruption could potentially result either in USPS being required to take extraordinary steps, or, potentially, a disruption in mail service to these routes. Although USPS has prevented this potential disruption by offering to extend Mr. Fox's original contracts, the fact of filing a bid protest should not outweigh the public interest in favor of regular contract processes and mail delivery.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss Mr. Fox's complaint as moot, or, in the alternative, deny Mr. Fox's request for a temporary restraining order.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/ John J. Todor
JOHN J. TODOR
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L St., N.W.
Attn: Classification Unit - 8th Floor
Washington, D.C. 20530
Tel.: (202) 616-2382
Fax: (202) 514-8640

OF COUNSEL:
STEPHEN D. LOBAUGH
U.S. Postal Service
Office of General Counsel

June 26, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on June 26, 2008, a copy of foregoing "DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ John J. Todor